# CHARLESTON.

## TOWN OF DAVIS *v.* DAVIS.

Submitted January 25, 1895—Decided April 6, 1895.

1. NUISANCE—TOWN COUNCIL—MERRY-GO-ROUND.
    Under Code, chapter 47, section 28, giving the council of a town power to abate a nuisance, but not prescribing the methods of procedure, upon a petition signed by fifty residents, supported by two affidavits fully describing the alleged nuisance, a merry-go-round, and praying that the owner might be summoned before the town council, a summons signed by the mayor only in the nature of an order to show cause, and reciting the facts set out in the petition, was issued. *Held,* that the procedure and summons were sufficient.

2. Nuisance—Town Council—Writ.

A summons in the nature of an order to show cause, issued by a town council to a person charged with keeping a nuisance, not being a writ or process, within the meaning of Const. Art. II, sec. 8, need not run in the name of the state.

3. Continuances—Mayor—Justice of the Peace.

Code, chapter 50, section 58, providing for continuances in actions before a justice, does not apply to proceedings before the mayor under chapter 47, section 39, making it the special duty of the mayor to preserve the peace and good order of the town.

4. Nuisance—Town Council—Majority.

Code, chapter 47, section 28, giving the council power to abate anything which, in the opinion of a majority of the whole council, shall be a nuisance, does not require the recorder, or more than a majority of the council, to be present at the hearing of a petition to abate a nuisance.

5. Nuisance—Town Council.

Where the law gives the council of a town ample power to abate nuisances, and the council gives the person charged with maintaining the nuisance opportunity to be heard, it is unnecessary to resort to a court of equity for relief.

6. Nuisance—Town Council—Judicial Proceeding.

A proceeding by a town council against a person for maintaining a nuisance is judicial in its character, and the decision is subject to review.

7. Town Council—Remedy—*Certiorari.*

Where a person accused of maintaining a nuisance feels aggrieved by the decision of a town council, his remedy, if the statutes gives no appeal, and no question is made that the statute is unconstitutional, or that the town authorities did not have jurisdiction of the subject-matter, is by *certiorari,* and not by prohibition.

8. Nuisance—*Certiorari*—Supreme Court of Appeals.

The Constitution, Article VIII, section 3, giving the Supreme Court of Appeals jurisdiction in cases of *certiorari,* and not the clause fixing the court's jurisdiction by the value of the matter in controversy, determines the court's jurisdiction when error is brought on the ground that the Circuit Court refused defendant a writ of *certiorari* on a conviction by a town council for maintaining a nuisance.

A. M. Cunningham for plaintiff in error, cited 73 Ind. 284; Wood's Law of Nuis., p. 76; 20 N. J. Eq. 530; 118 Pa. St. 402; Am. & Eng. Ency. Law, vol. 16, 922; 3 Paige (N. Y.) 218; 34 W. Va. 804; 29 W. Va. 48.

C. W. Dailey and C. O. Strieby for defendant in error,

cited Code, c. 47, s. 28; Dill. Mun. Corp. 374-378; 2 Tuck. Comm. 303; 4 Min. Inst. 754; 51 Me. 503; 34 W. Va. 804; 16 Am. & Eng. Enc. Law 928: Wood Nuis. § 809; 33 Conn. 118; 50 Md. 517; 57 Pa. St. 274; 29 W. Va. 48; Code, c. 110, s. 1; Id. c. 47, s. 28; 28 W. Va. 227, 232; 13 W. Va. 358; 22 Gratt. 454; Dill. Mun. Corp. (Ed. 1881) §§ 94, 95; L. R. 4 Ch. App. 388.

HOLT, JUDGE:

This was a proceeding on the part of the incorporated town of Davis against S. T. Davis, to have declared to be and abated, as a nuisance, a steam riding gallery, commonly called a "merry-go-round," operated by defendant Davis in the town, on lot No. 73. Such proceedings were had that the town council, by judgment rendered on the 10th day of August, 1894, declared the same to be a nuisance, and ordered it to be abated—to be stopped, we infer. On the 17th day of August, S. T. Davis presented to the Circuit Judge, in vacation, his petition for a writ of *certiorari,* but on mature consideration it was refused, and to such refusal this writ of error was granted. Defendant Davis appeared at the time and place mentioned in the process before the members of the town council, and moved to quash and dismiss the summons, as unauthorized by law, and as otherwise faulty and defective.

Was such motion improperly overruled? Section 28 of chapter 47 (see Code, 1891, p. 426) which defines the powers and duties of the council, and among them the power to prevent injury and annoyance to the public or to individuals, and to abate, or cause to be abated, anything which, in the opinion of the majority of the whole council, shall be a nuisance, does not prescribe the forms and methods of procedure. Therefore they are allowed a wide discretion, within the limit of reasonable fairness. In this case there was a petition and information, signed by fifty residents of the town, supported by two supplementary affidavits, suggesting the location of the riding gallery, the name of defendant as the owner operating it, and praying that he might be summoned to show cause why the same should not be declared to be a nuisance and abated, being complained of as both

a public and private nuisance. Upon this the summons in the nature of a *scire facias,* or rule to show cause, was issued. It gives the defendant notice of the injury and annoyance suggested and complained of, commands the officer to summon him to appear at a certain time and place "to show cause, if any he can, why the steam riding gallery, commonly known as the 'merry-go-round,' owned by him, and operated on lot No. 73, as shown by the map of the town of Davis, between the hours of eight and ten p. m. each day, since the 3d day of August, 1894, until this date, shall not be declared a nuisance, and abated as such. (Dated and signed by the mayor.)" I know of no law requiring it to be signed by the members of the council. In view of the purpose the summons and forms of procedure are intended to accomplish and subserve, I can call to mind no more short, simple and efficient form than this, to give the party written notice of the thing complained of, the relief asked, and of the time, place and tribunal when and where he is to appear and show cause why the same should not be granted. As to the authority for it, it finds justification in the forms of the various writs of *scire facias* and rules to show cause which have been in use for the like purpose time out of mind. They were used before the ordinary distinctive forms of common-law actions came into existence, and they still survive as efficient and simple methods of notice and procedure in daily use.

But it is said that it is a writ, and void because it does not run in the name of the state, as required by section 8, article II of the Constitution. See Code, 1891, p. 21. I do not regard it as a writ or process of any tribunal acting as a court, but simply a notice, in the name and on the behalf of the town of Davis, that defendant should appear before the council at the time and place designated, and show cause, if any he could, why they should not, in the exercise of their police power, abate his riding gallery, as a nuisance—a method deemed expeditious enough to meet the exigencies of this particular case, and certainly proper in itself, and fair to the defendant; for it not only gave him an opportunity to show cause, but to remove or stop it himself if he saw fit.

The defendant demanded, as matter of right, a continuance of the cause for seven days, as allowed by section 58 of chapter 50 of the Code in an ordinary civil action before a justice. This was refused, but the further hearing was deferred for twenty four hours.

Such refusal was not error, for three reasons: *First.* It was not a cause within the meaning of that section. Nor was the mayor acting as a justice of the peace to try a case between parties, but as the chief executive officer of the town, according to section 39 of chapter 47 of the Code, which makes it his especial duty to see that the peace and good order of the town are preserved, and that persons and property therein are protected. Therefore, when fifty residents lodged with him their sworn information and complaint of a nuisance, and asked its abatement, and that defendant might be cited before the council to show cause, if any he had, against it, the mayor caused such citation to be issued and served, in the name and on the behalf of the municipality, for a hearing of the matter before the common council, having first fixed the time and place. *Second.* If, within the meaning of the section, defendant made no affidavit, and in such case the statute requires it. *Third.* And when the examination took place, on the next day, defendant appeared with, and examined on his own behalf, some twenty five witnesses.

Again it is said there was error because the council heard the case when the recorder was absent. Section 27 of chapter 47 says, "The mayor and recorder shall vote as members of the council." But section 24 of chapter 47 says, "A majority of the council shall be necessary to form a quorum for the transaction of business." And the inference is that no greater number is required, unless the law in the given case specially makes the presence of the whole, or such greater number, necessary. I can find no such law. The section relied upon for this contention is section 28, which says the council shall have power to abate, or cause to be abated, anything which in the opinion of a majority of the whole council, shall be a nuisance. This does not mean that more than a quorum must in such case be present, but that a ma-

jority of the whole, including those absent as well as those present, must concur in such opinion. Here five out of the whole seven concurred in the opinion to abate.

The defendant urges that the remedy by injunction should have been resorted to. In most cases—in many cases, rather —it is hard to conceive of a judicial remedy more full and complete, more flexible in adaptability to the peculiar exigencies and ever-varying requirements of the cases, or, what may be more to the point, more simply efficient and speedy; so much so that it has become a common judicial remedy in a common criminal nuisance, where abatement is necessary, and in a large class of cases has well-nigh superseded actions of law, except, perhaps, where *mandamus* is added to what we would call common-law suits, as an ancillary remedy, or mode of carrying a specific judgment into effect. But I take it for granted that some sort of a nuisance, great or small—and many of a petty character—arises almost every day in cities and towns. It would be intolerable to have to apply to a Circuit Court, in such cases; and it would seem not to be necessary under this statute, in most cases, where the party is properly heard before he is condemned, though it is easy to imagine grave and perplexing questions where such resort to the ordinary courts would be prudent and discreet, and especially safe, on the part of the common council. Long experience, the great practical test of general fitness and convenience in such matters, has shown that self-governing municipalities must have large powers over such affairs, for the prevention of injury and annoyance to individuals, and the protection of the public from things dangerous, offensive, or unwholesome; in other words, to see that each one has the full enjoyment of his rights of life, liberty and property, and therefore that each one shall so use such rights of his own as not to invade or injure those of another. This is the main purpose of their creation, and the chief function in their existence; so that their fair and honest efforts in that behalf should be liberally construed, and steadily upheld. But, on the other hand, it would be intolerable for such local municipal authorities of a town to meet in private, and declare a

particular thing to be a nuisance, without giving the party an opportunity to be heard and show cause against it. See *Yates* v. *Milwaukee,* 10 Wall. 498. Hence what seems to me to be the fair and prudent course was pursued by the mayor and council of the town of Davis in this instance.

Now the question arises, and has been discussed, what is the nature of such proceeding? It is plainly judicial in its character. I hardly see how it can be regarded otherwise. It is true that it is in the exercise of the general police power delegated by the legislature. But is the judicial ascertainment of a fact in a proceeding in the concrete case against a particular person and thing, after due notice given, in order to ascertain the character or status of the thing as a nuisance, followed by execution of the judgment, any the less a judicial proceeding, in the particular instance, because it is done under the delegated police power? It is merely a concrete case of the administration of justice, like all other cases judicial. This defendant complains of this seizure of his property as unreasonable, the condemnation of it as a public nuisance as unlawful. Can it be that such seizure and condemnation are final and conclusive? It has been held not to be conclusive, and that the party proceeded against can test the validity of the action of the council by *certiorari,* if not by distinct action against the town for damages. See *Cole* v. *Kegler,* 64 Iowa 59 (19 N. W. Rep. 843).

Neither do I agree with counsel for appellee that his remedy was by prohibition, and not by *certiorari,* for here no question is made that the statute in question is not constitutional, and that the town authorities did not have jurisdiction of the subject-matter; so that if they failed to follow the law, in applying it to the facts of the case, the remedy is by *certiorari,* and not by writ of prohibition. *Mayor, etc., of Montezuma* v. *Minor* (1883) 70 Ga. 191. The statute gives no appeal in such cases, and, being the creature of statute law, it does not lie, except where it is given by express terms.

The rule with regard to a *certiorari* is the very reverse. It always lies, unless expressly taken away, and it requires very strong words to do so. The reason of this is that it is an extremely beneficial writ, being the medium through

which the court of queen's bench exercises its corrective jurisdiction over the summary proceedings of inferior courts. 2 Smith Lead. Cas. (9th Ed.) p. 998, note to *Crepps* v. *Durden.* And, so far from this common-law writ being taken away in this state, the constitution, in express terms, gives the circuit court supervision and control over all proceedings before justices and other inferior tribunals by *certiorari* (see Const. Art. VIII, s. 12); and by section 2 of chapter 110 of the Code (Ed. 1891, p. 761) the common-law jurisdiction of the writ is declared, and in every case, matter, or proceeding before a council of a city, town or village it is expressly provided that, subject to certain exceptions mentioned, the record or proceeding may, after a judgment or final order therein, be removed by a writ of *certiorari* to the proper Circuit Court, and such writ may be awarded by the judge in vacation as well as by the court.   For mode of procedure see section 4, *etc.*, of chapter 110.

It is true that the question of what is a nuisance in a given case is a very perplexing one, and one that the tribunals are constantly called upon to decide; but so far from that being a reason why it should be left to the sole and unappealable decision of the council, with unlimited power to say what is a reasonable exercise of such power, it must for that reason be liable to frequent and grievous abuse, in the illegal and unnecessary injury of private property and invasion of private right, and must strengthen rather than weaken, the claim of the party affected that he should have the right to subject the proceeding to the scrutiny of the ordinary courts. I think, therefore, that the Circuit Court had jurisdiction of the case.

As we have already seen, this was a summary conviction of defendant for the creation of a nuisance, which has been affirmed in the Circuit Court on *certiorari*.   In such a case the clause which determines the jurisdiction of this Court by the value of the matter in controversy does not apply, an appellate jurisdiction is expressly given in cases of *certiorari* by section 3 of article VIII of the Constitution.   See Code, (Ed. 1891) p. 38.   And even if it were a civil case, and one in which the jurisdiction is to be determined by the value of

the thing declared to be a nuisance, it would not be going far to assume, as a matter of general knowledge, that a steam engine, boiler, riding apparatus, *etc.*, were of greater value than one hundred dollars.

The Circuit Judge to whom the record—made up of the evidence given and proceedings had before the council—was presented, together with a petition praying that a writ of *certiorari* might be awarded, heard the application upon the merits, and refused to award the writ. The question now reached is, was such refusal right? Reviewing the proceeding of the council upon the merits, and determining all questions arising on the law and the evidence, as certified, and rendering such judgment upon the whole matter as law and justice require, should the order of the town council have been affirmed, if the *certiorari* had been allowed?

Many of the questions raised by the plaintiff in error have already been discussed and considered. Was the riding gallery a nuisance at that particular place and time? is the only one that remains. That depends upon the place, the time, the circumstances, the manner in which it was operated, and the effects it produced. Did the noise and crowd, and other effects of this riding gallery, invade any public or private right? Did it materially interfere with and impair the ordinary physical comfort of any one of normal sensibility and ordinary mode of living, in his home or place of business? The place has much to do with it. It seems to have been on a vacant lot in a populous part of the town, with at least four dwellings near by. The time is important. It was operated up to ten and half-after ten o'clock in the night, tending to prevent and disturb sleep, and had been kept up continuously for six days. The attending circumstances are important. It drew to the place a large and noisy and boisterous crowd. The nature of the thing itself is important. It was run by a steam engine. The whistle blew every few minutes. The music played, the gallery ran around, the crowd hallooed, *etc.*, until ten o'clock at night. That it was a mere idle amusement, perfectly legitimate in a proper place, or at a proper time, is not wholly unimportant. That which calls together a disorderly crowd in a public place

was held to be a public nuisance in *King* v. *Moore*, 3 Barn. & Ald. 184. The making of loud music, with instruments or otherwise, in the night time, to the disturbance of a neighborhood, was held to be a public nuisance in *Rex* v. *Higginson*, 2 Burrows 1233; *Com.* v. *Oaks*, 113 Mass. 8; *Com.* v. *Smith*, 6 Cush. 80. Those who participated did not regard it as a nuisance. Some of the witnesses attended. Some permitted their children to attend. They thought it a harmless amusement for the children. It did them good, rather than harm, and the proprietor was careful, polite, and kept good order. This, I take for granted, is true, at a proper time and in a proper place. Other witnesses lived at a distance. They, of course, were not annoyed, and they thought it was not a nuisance to those who lived near by. Four witnesses who lived close by say that it was a nuisance, disturbed and annoyed them at their homes, and prevented or interrupted their sleep. One witness, who lives on the same street, five lots below, says it was a considerable annoyance, and, to some extent, kept him awake. Quite a number of witnesses who live or do business near by were not annoyed by it, and do not regard it as a nuisance. From all this, and from the general character of such machines in operation, with their usual accompaniments, it is not hard for one to form a pretty accurate opinion on the question involved; that is, that when kept up day and night, for days together, in such a place, it was a decided nuisance to some people, of ordinary sensibility, who lived or had their place of sleeping adjoining or close to the vacant lot No. 73, while to those who lived at a distance, those who participated, and some of those who lived close to the place, it was not a nuisance—did not annoy them to any material extent. Such questions can not be decided by a mere count of those two classes, or by taking a vote of the town. Whether a thing is or is not a nuisance does not depend upon the notions of people living in a designated locality. "No man has a right to take from another the enjoyment of what are regarded by the community as the reasonable and essential comforts of life because the notions of some individuals, or of the people of a given locality, may not correctly estimate the standard of such com-

forts." *Owen* v. *Phillips* (1881) 73 Ind. 284, 295. See *Snyder* v. *Cabell*, 29 W. Va. 48 (1 S. E. Rep. 241); *Powell* v. *Furniture Co.*, 34 W. Va. 804 (12 S. E. Rep. 1085).

On the whole I think that a merry-go-round, run by a steam engine, the whistle of which blew every few minutes, accompanied by a band, and attended by a large, noisy and boisterous crowd till after ten o'clock at night, disturbing some of the people living near by it, is such a nuisance as a town council has power to abate, after proper investigation under Code, chapter 47, section 28.

In reaching this conclusion as to the results produced by the acts complained of, I lay great stress upon the finding of the council—men whose duty it was to ascertain them, and who had a right to observe and inspect for themselves, as well as to hear testimony. The law lays down no fixed method of procedure, and we may well believe that they resorted to means found to be so useful in like cases; that is, they went upon the ground and viewed the place in question and heard and observed for themselves the facts relating to the controversy. See section 30, chapter 116, Code. With this view of the law and the facts of the case, the judgment complained of is affirmed, but by an equally divided court.

---

Dent, Judge (*dissenting*):

Section 28, chapter 47, of the Code, under which these proceedings were instituted, contains two clauses referring to what, under the law in its broadest signification, are classed as nuisances, as follows, to wit: *First.* "To prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome." *Second.* "To abate or cause to be abated anything which in the opinion of the majority of the whole council shall be a nuisance." The first refers to and includes all such things which, though lawful in themselves, may be conducted, used, or neglected in such manner and to such an extent as will cause them to become an injury or annoyance to the public or individuals, by reason of their becoming dangerous, offensive, or unwholesome, while the second refers to such things as are a nuisance *per*

*se,* in the opinion of the council; that is, their sound and reasonable discretion. To hold otherwise is to render the first clause nugatory and meaningless, as the word "nuisance," construed in its broadest sense, would cover everything that injuries or annoys the public or individuals by reason of its being dangerous, offensive or unwholesome, while in its strictest sense it includes only such things as are an injury or annoyance to all persons who come within the sphere of their operations, though in a greater degree to some than others. For instance, a cesspool throwing off putrid odors or gases; a harsh and grating sound, continuously repeated; the unnecessary obstruction of a public thoroughfare; a dangerous and unprotected excavation or opening of any kind —are all injurious or noisome to every one who may come within their sphere, and hence are nuisances *per se.* But those things which are a source of pleasure and enjoyment to some, while they are a positive annoyance to others, such as singing, dancing, a hand organ, amusements, processions and occupations of all kinds, including a merry-go-round, cats, dogs and children, are not nuisances *per se,* but the world would be a dreary place to many without them. All such things can be indulged in and used in such manner as to make them a nuisance to certain individuals, and yet they may be a continual source of happinss and necessity to a large majority of the people who come within their sphere. The council in determining what is a nuisance *per se,* and therefore to be abated, must use their sound discretion; hence the use of the words, "in the opinion of a majority of the whole council." But they can not hold and abate as nuisance, under the second clause, that which is not, in a greater or less degree, injurious and annoying to all alike who come within its sphere. To give them the power to abate everything which, in the opinion of a majority, was annoying to any individual, would be unjust, unreasonable, destructive of private rights, and contrary to fundamental law.

A merry-go-round is not a nuisance *per se,* and does not come under the second clause, and is therefore not a subject of abatement by the majority of a town council, and the judgment should have been reversed, and the proceedings quash-

ed. The authority to abate given to a town council, should not be construed as a license to do what they please with their neighbor's property, but only to protect the interests of the public. In this case no such interests were at stake, but it was simply a question of whether a few individuals, because of annoyance, real or imaginary, had the right to cause the abatement or destruction of that which afforded pleasure, amusement, exercise, and experience to a much larger number. It may be said that a merry-go-round comes under the first clause. Such is the case. But this prosecution is under the second clause, and the first does not authorize the harsh measure of abatement, but is simply a measure of regulation or prevention. A merry-go-round may be conducted in such manner as not to be offensive to any one, and yet it may be made a source of annoyance to all. In such cases it becomes the duty of the council to prevent its management in such way as to make it an offensive annoyance to a person of ordinary sensibilities; that is, ordinary people, who love their own and their neighbor's children, find a sufficient recompense for all annoyance in their happy enjoyment of innocent pastimes and sports, and observe the golden rule, "As ye would that men should do unto you, do ye even so unto them."

As is said in the case of *Westcott* v. *Middleton*, 43 N. J. Eq. 483 (11 Atl. 490): "Before the court can condemn a trade or calling, it must appear that it can not be carried on without working an injury or hurt to another; and, as I have said, that injury or hurt must be such as would affect all reasonable persons alike, similarly situated. The law does not contemplate rules for the protection of every individual wish, desire, taste. It is not within the judicial scheme to make things pleasant or agreeable for all citizens of the state." Such a scheme could not be devised by human ingenuity, for it is always too hot or too cold, too wet or too dry, too light or too dark, for some people. Always complaining, never satisfied, morbid, phlegmatic, continually annoyed, fault-finding, looking for slights, easily offended, hysterical, captious, haters of children and their enjoyments, a misery to themselves and a heaviness to their friends, is

their history; and for such the law affords no remedy, as it can not administer to a mind and heart diseased. On the judgment of such it is never safe to condemn a lawful calling as an offensive annoyance. The conduct of this merry-go-round was a legitimate business—just as much so as the selling of ribbons or flowers for hats, cigars or pipes, or sweetmeats or candies, and as useful or beneficial. The council, before regulating it, should have found out wherein it was offensive, and then have compelled the manager to submit to necessary rules to reduce its offensive characteristics as much as possible, and, if necessary, to lop off some of the offensive contingents.

To testify that a thing is a nuisance does not make it so, but the witness must testify to the annoying characteristics. R. W. Eastman testified "that he goes to bed early and gets up early; that he sleeps best the first part of the night; that the noise of the merry-go-round interrputed him from sleeping; that his wife had the headache one night, and it annoyed her from sleeping; that the crowd around the merry-go-round hallooed and made a noise, and that the music annoyed him." To go to bed before 9:50 p. m. on a sultry summer night is out of the ordinary rule, in towns the size of Davis, and this was the hour the amusement stopped. Neither does ordinary music annoy the ordinary man, especially when in bed, nor should the joyous shouts of children at play. So far as his wife was concerned, she certainly was guilty of contributory negligence in having the headache; and, as to which caused her to lose sleep, she was the best witness. George Amlaw says the music annoys him from sleeping. Wilbur Patriquan says he is annoyed out of one hour's sleep each night. F. A. Cruikshank says: "The music and whistle from the engine annoy me. I imagine the whistle blows every five minutes, if it don't blow." George S. Ramsey says it slightly annoyed his little girl when she was sick. But he considers it a great source of amusement, and not a nuisance. C. E. Wolford says: "It keeps me awake some. It makes considerable annoyance." This is the substance of all the evidence in favor of the prosecution. Three were annoyed by the music, one by the noise of the crowd, one by the whistle, which he imagined blew, whether

it did or not; and, being early bed-goers, they were each cheated out of from half to one hours sleep each night. This is the evidence of nuisance on which the judgment of abatement was founded, and the defendant deprived of his legitimate business. If the whistle was an offensive annoyance, the council could have prevented its blowing. If the music was an offensive annoyance, the council could have required the playing of tunes low and soothing, or stopped it altogether. The children's mirth and laughter could have been suppressed in the same manner, and their shouting could have been prevented by the promise of a free ride. And, that these witnesses should enjoy their twilight rest, they could have caused the "machine" to abate at early candle-lighting, or when the chickens go to roost. "The power to abate nuisances, like all other powers, must be exercised reasonably." It is not unlimited power, but only such as is reasonably necessary for the public good. The general authority to declare what is a nuisance will not "justify the declaring of acts, avocations, or structures, not injurious to health or property, nuisances." *Teass* v. *City of St. Albans,* 38 W. Ya. 1 (17 S. E. Rep. 400).

On the side of the defense, twenty three witnesses testify that it is an innocent, harmless, healthful amusement, which the children enjoy very much; that the music is greatly enjoyed, is a pleasant soporific, and that there is really not enough of it; that it is conducted in an orderly, careful manner, and is beneficial to the community. They fully establish it to be of great utility and benefit to the public, instead of being a nuisance. If the testimony of the prosecution was sufficient, that of the defendant has a decided preponderance. The evidence, and the law independent of the evidence, was for the defendant, and such should be the judgment of the Court. The attempt was once made to enjoin the erection of a schoolhouse, for the reason that it was a nuisance. How would the public regard such an attempt at the present time? All other buildings must give way to public schoolhouses, and the education, elevation, comfort and happiness of the children is considered a primary duty of mankind; and anything that contributes to their harmless amuse-

ment should receive the encouragement of the public conscience, rather than be placed under the ban of the law. The power to abate, if it exists, should never be exercised by a town council when the power to regulate will accomplish the same end without the destruction of property or of a lawful avocation.

———

BRANNON, JUDGE (*dissenting*):

I can not agree that a merry-go-round is a public nuisance, to which the harsh and vigorous remedies provided by law for public nuisances shall be applied. This merry-go-round is not proven a nuisance, and is not, in its nature, such. It is an amusement from which children derive great pleasure and enjoyment, and, with them, their parents. A great many most respectable grown people enjoy their presence in our towns. They want that element necessary to stamp them as nuisances—that their harm or annoyance shall be so extensive as to affect the public at large, not merely a few persons. Many things annoy, perhaps hurt, a few persons, but a few must not make law for the many. A band discoursing music in a park, very frequently, in summer, no doubt, annoys aged or sickly persons in the neighborhood, and others tired of its music, from repetition; and shall we say it is a nuisance? Shall we say a church wherein, for weeks, religious revivals are held until late at night, is such? Is the ringing of church bells? Are theatres and circuses? Are even billiard tables and bowling alleys that are open until late in the night? Many things annoy a few; but they can not deny the rights, even the amusements or pastimes, if decent, and not immoral, of the many. They must submit to the inconvenience peculiar to themselves. I do not attempt a discussion at large. We must not make government too rigid and exacting, upon even the amusements of the people, else it becomes, in their eyes, an engine of oppression and tyranny. The action of the council in this case, under the form of law, took away the right of the owner to use his property to earn a livelihood, and invaded the right of the people to go to a decent

place for harmless and pleasurable amusement. If the company frequenting such places, as it seldom or never does, becomes disorderly or immoral, that is a matter of police control, but does not make a merry-go-round a public nuisance.