## HARRY H. BUCHANAN, ET AL.
*vs.*
## MILFORD DRIVE-IN THEATRE CORP.

Superior Court        New Haven County        File No. 57210

MEMORANDUM FILED SEPTEMBER 12, 1939.

*Herbert L. Emanuelson*, of New Haven, for the Plaintiffs.

*William Hadden*, of New Haven; *Herman Levy*, of New Haven, for the Defendant.

O'SULLIVAN, J.   This action seeks the abatement of an alleged nuisance, and as ancillary thereto, the issuance of a temporary injunction.   Prior to the hearing on the motion for temporary relief, the parties agreed that the conclusions reached thereon should be decisive of the main case and that final judgment might accordingly enter.   This procedure will be pursued.

The plaintiffs are residents of Milford and live within a circumscribed area surrounding an open-air motion picture theatre owned and operated by the defendant.   This type of amusement place, which is merely a location where motion pictures are shown out-of-doors, is novel to Connecticut.   The theatre, so-called, consists of about ten acres of vacant land upon which have been erected a small building for housing and operating the projection machinery, and a tower, eighty feet high and one hundred feet wide, which serves as a screen for the reception of the pictures.   The audience enters the grounds in automobiles which are driven to and parked upon terraces running semi-circularly in front of the tower.   The occupants of the automobiles remain in them while witnessing and hearing the performance, which begins each evening of the week at dusk.   Surrounding the property are evergreen trees which serve to define its limits, prevent outsiders from looking in, and, to some extent, deaden sound.   The theatre is located on the Boston Post Road, near its junction with Cherry Street.   The former is a four-laned, concrete, arterial highway over which extremely heavy traffic of busses, trucks, and passenger cars passes quite steadily throughout the day and night, and along which, in the immediate vicinity are located restaurants, gas stations, a foundry and other types of business enterprises.   Somewhat off

the Post Road and extending away from it are the homes of many people, of whom the plaintiffs are some. The theatre lies within an area zoned for business by the Town of Milford. Prior to the opening date, the defendant received licenses from the proper authorities to operate.

The theatre began to operate about the beginning of June. Due to the day's length at that time and for several subsequent weeks, it was impossible to start the performance until about nine o'clock and to conclude before one in the morning. As the days have shortened, the starting time has advanced so that, at present, the performance is over by midnight.

The sound effects synchronizing with the exhibition of the pictures are amplified by a set of horns originally installed near the top of the tower. Recently, this has been changed at an expense of $2,000 so that the horns are now about 25 feet above the ground. The defendant's investment in building and equipping the theatre is over $50,000.

Since the first day of operation, the nearby residents have been hearing the many effects emanating from the sound mechanism. These are as varied as the ingenuity of man to create them. They consist of laughter in all its varied expression, conversation in all its range, song and music in all their gamut, and all those other indescribable sounds from the wail of an agonized soul to the uproar of roller skaters upon a wooden floor.

These sounds are heard at various distances at varying intensities. Atmospheric and meteorologic conditions, of course, play an important part as well as do the types of pictures displayed. But the fact remains that practically each evening beginning at dusk and continuing until shortly before midnight, these plaintiffs are required to hear what the mechanism sends forth. As a result, at least one of the plaintiffs has had a nervous breakdown. Others, whose sensibilities appear to be those of the ordinary person, have been unable, at times, to enjoy the comfort and placidity of their homes. The noise prevents the concentration essential to reading; the radio cannot be enjoyed because of the confusion of sound; sleep is often delayed or even denied until such time as the performance ends. Children remain awake in bed far beyond the time when they customarily begin their slumbers.

The foregoing gives some indication of the effects of this irritating and continual source of annoyance. It is one thing to

visit the neighborhood and hear for a limited period the sounds from the theatre, but it is quite a different thing to live in its vicinity and know that on each evening, of each day, of each week, of each month, from dusk until midnight, one must have this noise in his ears.

It is true that on many evenings the sounds are neither audible to some nor unpleasant to others. But the anticipated unpleasantness of the future creates a strain from which they ought to be relieved.

Whether sound is a nuisance is, in large measure, a question of degree. Its determination depends on all of the surrounding conditions and circumstances. This requires consideration of such factors as the locality, the magnitude of the enterprise complained of, the time during which the sounds are heard as well as their intensity and their effects. *Eller vs. Koehler*, 68 Oh. St. 51, 67 N.E. 89; *Stevens vs. Rockport Granite Co.*, 216 Mass. 486, 104 N.E. 371; *Davis vs. Sawyer*, 133 Mass. 289; *Seligman vs. Victor Talking Machine Co.*, 71 N. J. Eq. 697, 63 Atl. 1093.

Sound may be a nuisance, even in the prosecution of a business lawful *per se*. *Brown & Brothers vs. Illius*, 27 Conn. 84. Thus, the bleating of calves in a slaughter house, *Bishop vs. Banks*, 33 Conn. 118; likewise the blowing of a factory steam whistle, *Parker vs. Union Woolen Co.*, 42 id. 399; the whine of a planing mill, *Hurlbut vs. McKone*, 55 id. 31; the music of a merry-go-round, *Town of Davis vs. Davis*, 40 W. Va. 464, 21 S.E. 906; the noise of an open-air amusement park, *Edmunds vs. Duff*, 280 Pa. 355, 124 Atl. 489; *Burroughs vs. City of Dallas*, 276 Fed. 812; *Phelps vs. Winch*, 309 Ill. 158, 140 N.E. 847.

Yet all noises, whether they come from family activities or the conduct of a business, are not to be classified as nuisances. But when they reach the point where they become annoying, irritating, and disturbing to the comfort and rest of the nearby residents of ordinary sensibilities to the extent outlined above, they ought to be so classified.

I am thoroughly satisfied that this theatre, as operated, creates a nuisance. Whether it should be deemed public or private in character is immaterial, because, from the special nature of the interest of these plaintiffs, they are entitled to seek relief from chancery.

Accordingly, a permanent injunction may issue restraining the defendant, during the night season, from using or permitting to be used any sound producing apparatus in connection with the projection of motion pictures at its open-air theatre in Milford when sound so produced is capable of being heard, under normal conditions, beyond 250 feet from the limits of its property.