588 S.E.2d 150

**REALMARK DEVELOPMENTS, INC., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Clyde W. RANSON (Ransom), Jr., and Judith J. Ranson (Ransom), Defendants Below, Appellants.**

No. 30895.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2003.

Decided April 17, 2003.

Charles E. Hurt, Esq., Charleston, for Appellants.

Timothy J. LaFon, Esq., Ciccarello, Del Giudice & LaFon, Charleston, for Appellee.

MAYNARD, Justice.

This case is before this Court for a second time. Realmark Developments, Inc., the appellee herein and plaintiff/counterclaim defendant below (hereinafter "Realmark") instituted this action to recover unpaid rent and real property taxes for property leased to Clyde and Judith Ranson, the appellants herein and defendants/counterclaim plaintiffs below (hereinafter "the Ransons").[1] The Ransons filed a counterclaim contending that Realmark was unjustly enriched by repairs and improvements they made to the property. The circuit court granted summary judgment to Realmark on its claim for unpaid rent and property taxes, and that ruling was upheld by this Court on appeal in *Realmark Developments Inc. v. Ranson,* 208 W.Va. 717, 542 S.E.2d 880 (2000) (hereinafter *"Realmark I "*). However, we remanded the case for a trial on the Ransons' unjust enrichment claim.

Upon remand, a bench trial was held. After the Ransons presented their case, Realmark filed a motion for a directed verdict. The circuit court granted Realmark's motion and entered judgment in its favor on April 2, 2002. The Ransons' appeal of that order is now before this Court.

In this appeal, the Ransons contend that the circuit court erred by denying them a jury trial; by refusing to allow their experts to testify regarding the cost of the labor and

---

**1.** It appears that the Ransons' surname is actually "Ransom." However, they are called Ranson in the style of the case and in various documents filed in connection with this action. Thus, for consistency purposes, we refer to them as the Ransons.

materials they expended on the property; and by granting Realmark's motion for a directed verdict. Upon reviewing the petition for appeal, the entire record, and the briefs and argument of counsel, we find that the Ransons were entitled to a jury trial. We also find that the Ransons should have been allowed to present evidence of the cost of the improvements they made to the property for the purpose of determining damages. Therefore, we reverse the final order of the circuit court and remand this case for further proceedings consistent with this opinion.

## I.

### FACTS[2]

In 1991, the Ransons leased a building located in Charleston, West Virginia, from Realmark. The lease agreement provided that the Ransons had the option of purchasing the building at the end of the initial five-year-lease term. According to the Ransons, Realmark orally agreed that a portion of the rent paid by them under the lease would be applied toward the purchase price of the building. The Ransons also contend that Realmark promised to assist in financing the property at the end of the five-year lease, but subsequently refused to do so. As a result, they were unable to purchase the building.

The Ransons say they relied upon Realmark's promises and, consequently, expended a substantial sum of money to repair and remodel the building during the five-year-lease term. The lease agreement executed by the parties on May 31, 1991, included a purchase price for the property of $195,000.00. However, at the end of the Ransons' five-year lease, Realmark sold the property to a third party for $270,000.00.

Pursuant to this Court's decision in *Realmark I*, a trial was held on the Ransons' unjust enrichment claim on February 5 and 6, 2002. After the Ransons presented their case, Realmark moved for a directed verdict. The circuit court granted the motion, and the final order was entered on April 2, 2002. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the Ransons appeal the circuit court order granting Realmark's motion for a directed verdict. This Court has held that:

> "The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed." Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

Syllabus Point 6, *McCloud v. Salt Rock Water Pub. Serv. Dist.*, 207 W.Va. 453, 533 S.E.2d 679 (2000).

The Ransons also assign errors in this case which raise questions of law. We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law ... we apply a *de novo* standard of review." Syllabus Point 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

#### A. Right to a Jury Trial

The Ransons first contend that the circuit court erred by denying them a jury trial. During the pre-trial conference, the Ransons indicated that they wanted a jury trial, but Realmark objected. Realmark argued that the Ransons' claim was equitable in nature and therefore, they were not entitled to a jury trial. The trial court agreed with Realmark and held a bench trial.

---

**2.** For additional background facts of this case, see *Realmark I.*

"Prior to the introduction of the Rules of Civil Procedure, a right to a jury trial existed in an action at law. In an equitable dispute, however, the right to a jury trial did not exist." *Little v. Little*, 184 W.Va. 360, 362, 400 S.E.2d 604, 606 (1990). The distinction between law and equity was abolished by Rule 2 of the West Virginia Rules of Civil Procedure which provides that "[t]here shall be one form of action to be known as 'civil action.'" Nonetheless, "it has been recognized that the right to a jury trial depends upon whether one had that right prior to the adoption of the Rules." *Warner v. Kittle*, 167 W.Va. 719, 725, 280 S.E.2d 276, 280 (1981).

In determining whether an action is legal or equitable in nature, both the issues involved and the remedy sought are examined. 47 Am.Jur.2d *Jury* § 34 (1995). Generally, an action is one in equity if it is based on equitable rights and equitable relief is sought. *Id.* at § 33. For example, an action for specific performance is purely equitable in nature, and traditionally, there has been no right to a jury trial in that type of case. *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 354, 211 S.E.2d 349, 352 (1975) (citations omitted). By contrast, a "right to trial by jury generally applies to an action for the recovery of money or damages, or a legal action for the recovery of money only, or an action in which only a money judgment is sought." 50A C.J.S. *Juries* § 50 (1997). Essentially, "the right applies where the legal remedy of damages is full and adequate and can do complete justice between the parties." *Id.*

In the case *sub judice*, the Ransons claim that Realmark was unjustly enriched by the improvements they made to the property at issue. In *Realmark I*, this Court explained that "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." 208 W.Va. at 721–22, 542 S.E.2d at 884–85. Clearly, the right to recover for unjust enrichment is based on the principles of equity. However, the remedy sought in this case is a money judgment and, thus, is governed by law. In other words, "unjust enrichment . . . is but the equitable *reason* for requiring payment for value of goods and services received." *Nehi Beverage Co., Inc. of Indianapolis v. Petri*, 537 N.E.2d 78, 85 (Ind.Ct.App.1989) (emphasis in original).

As the *Petri* court explained:

"The theory on which the plaintiff in this suit seeks money damages, unjust enrichment, sometimes referred to as restitution, a contract implied in law, quasi-contract, or an action in *assumpsit*, is the product of a long tradition in law, and is an action at law. (*Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 173, 97 N.E. 280, 284–85; *Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App.3d 1060, 1063, 307 N.E.2d 445, 448; see Restatement of Restitution, Introductory Note (1937); 1 Palmer, Restitution sec. 1.2 (1978); 1 A. Corbin, Contracts, sections 19, 20 (1 vol. ed.1952); Dobbs, Remedies sec. 4.2, at 232 (1976).) The confusion with equity emanates from the decision of the King's Bench in 1760 in the case of *Moses v. Macferlan*, 2 Burr. 1005, 97 Eng.Rep. 676, where Lord Mansfield stated that the defendant's obligation came 'from the ties of natural justice' founded in 'the equity of the plaintiff's case.' (See 1 Palmer, Restitution sec. 1.2, at 7 (1978); *Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 173, 97 N.E. 280, 285.) As Palmer explains, the statement concerning the action of quasi-contract being equitable has been repeated many times, but merely refers to the way in which a claim should be approached 'since it is clear that the action is at law and the relief given is a simple money judgment.' (1 Palmer, Law of Restitution sec. 1.2, at 7 (1978).) . . ."

*Id.*, quoting *Partipilo v. Hallman*, 156 Ill. App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8, 11 (1987). Accordingly, we now hold that a suit seeking monetary recovery under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury. Thus,

the Ransons are entitled to a jury trial.[3]

### B. Exclusion of Expert Testimony

Although we have determined that this case must be remanded for a new trial, we feel it is necessary to address the Ransons' contention that the circuit court erred by not allowing them to present expert testimony regarding the cost of labor and materials they expended on the building. Prior to trial, Realmark filed a motion in limine to exclude the testimony of Hurford Bolyard and James White concerning the cost of the labor and materials which were used to improve the building leased by the Ransons. The Ransons claimed that they had not preserved all of the bills for the labor and materials, and therefore, they intended to present the testimony of Mr. Bolyard and Mr. White to establish their costs and the damages they sought to recover. However, Realmark asserted that the measure of damages in this instance is the increased value of the property as the result of the improvements. Since Mr. Bolyard and Mr. White were not qualified to render such an opinion, Realmark argued that their testimony should be excluded. The circuit court agreed.

As set forth above, we determined in *Realmark I* that the Ransons had a viable unjust enrichment claim because there was evidence that indicated that the Ransons made improvements to the property based upon their belief that Realmark would give them financial assistance so that they could exercise their option to purchase at the end of their five-year lease. In that regard, we said:

> As indicated in Restatement, *Restitution* § 53(3), where a person acquires an interest in land as a result of an agreement with the owner, such as the leasehold interest acquired by the Ransons in the present case, under a mistake of law, that person is entitled to restitution for improvements which he places on the land as a result of the mistake. In the present

case, it is the Ransons' claim that they believed that Realmark Developments, Inc., was legally obligated to assist them in financing their purchase of the property in question. While they may have been legally mistaken, their belief, if factually established, may entitle them to restitution under the restitution count of their amended counterclaim.

208 W.Va. at 722, 542 S.E.2d at 885.

 It is well established that "[r]estitution is allowed only to the extent the injured party has conferred a benefit on the other party by way of part performance or reliance." 22 Am.Jur.2d *Damages* § 56 (1988). Consistent with this principle, this Court has held:

> An improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements.

Syllabus, *Somerville v. Jacobs*, 153 W.Va. 613, 170 S.E.2d 805 (1969).

The plaintiffs in *Somerville* reasonably relied upon a surveyor's report and mistakenly

---

**3.** We note that Realmark also argued in this appeal that the Ransons eventually agreed with the trial court's decision to hold a bench trial, during the pre-trial conference and, thus, waived their right to a jury trial. Having reviewed the transcript of the pre-trial proceedings, we refuse to characterize the Ransons acquiescence to the

court's decision as a waiver of their right to a jury trial. Instead, we find that the Ransons continued to object to the trial court's decision. In fact, they filed a "Demand for a Jury Trial and Objection to the Court's Denial of Jury Trial," following the pre-trial conference.

constructed a warehouse building on a lot owned by the defendants. The plaintiffs filed suit seeking $20,500.00, the cost of the improvements they made to the defendants' property. The parties stipulated that the property in question had a fair market value of $2,000.00 immediately prior to the erection of the building by the plaintiffs. They also agreed that the fair market value of the property after the improvements were made was $19,500.00.

The trial court in *Somerville* entered judgment in favor of the plaintiffs and required the defendants to decide whether they wished to retain the building and pay the plaintiffs $17,500.00 or convey title to the property to the plaintiffs for $2,000.00 cash. This Court upheld the trial court's decision stating that "if the defendants retain the building and refuse to pay any sum as compensation to the plaintiff ... they will be unjustly enriched in the amount of $17,500.00, the agreed value of the building[.]" 153 W.Va. at 628, 170 S.E.2d at 813.

■ In the case at bar, Realmark contends that the *Somerville* decision supports its contention that the Ransons can only recover the increased market value of the property after the improvements were made. However, since *Somerville* was decided, the rule with respect to the measure of damages in claims of unjust enrichment has evolved. It is now recognized that,

> If a sum of money is awarded to protect a party's restitution interest, it may, as justice requires, be measured by either (a) the reasonable value to the other party of what he received in terms of what it would have cost him to obtain it from a person in the claimant's position, or (b) the extent to which the other party's property has been increased in value or his other interests advanced. The greater of the above two measures should be used in cases in which work has increased the value of the defendant's property, but there is some discrepancy between the reasonable value of that work and the amount of enhancement.

22 Am.Jur.2d *Damages* § 56 (1988).

■ In *Robertus v. Candee*, 205 Mont. 403, 670 P.2d 540 (1983), the Supreme Court of Montana explained why the measure of damages in this type of case can be either the *quantum meruit* value of the plaintiff's labor and materials or the value of the enhancement to the defendant's property. The Court stated:

> There may be cases where the enhancement to the defendant's property will be far less than the *quantum meruit* value of the plaintiff's efforts. For example, where the improvement did not enhance the value of the property but did result in a pecuniary saving to the defendant, the enhancement measure would not reflect the unjust enrichment. Conversely, there may be cases where the value of the enhancement greatly exceeds the cost of the improvement, as in this case.

> Thus the rule has evolved that the proper measure of damages in unjust enrichment should be the *greater* of the two measures. Restatement of Law, Contracts 2d § 371 comment b [ (1981) ]; 12 Williston, Contracts § 1480.

205 Mont. at 408–09, 670 P.2d at 543 (emphasis in original). In light of the above, we now hold that the measure of damages in an unjust enrichment claim is the greater of the enhanced market value of the property or the cost of the improvements to the property. To the extent that the Syllabus of *Somerville* differs from this holding, it is hereby modified. Therefore, upon remand, the Ransons should be afforded the opportunity to present evidence of the cost of the improvements they made to the property.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on April 2, 2002, is reversed, and this case is remanded to the court for further proceedings consistent with this opinion.

Reversed and remanded.