FILED
June 11, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0694, *State of West Virginia ex rel. AmerisourceBergen Drug Company, et al. v. The Honorable Alan D. Moats, Lead Presiding Judge, Opioid Litigation, Mass Litigation Panel, et al.*

AND

No. 20-0751, *State of West Virginia ex rel. Johnson & Johnson, et al. v. The Honorable Alan D. Moats, Lead Presiding Judge, Opioid Litigation, Mass Litigation Panel, et al.*

**ARMSTEAD, Justice, concurring, in part, and dissenting, in part, in 20-0694 and dissenting in 20-0751, joined by JENKINS, Chief Justice:**

It is undeniable that the opioid crisis in our State has not only had a devastating impact on our State's children and families, but also on our cities, towns, communities and counties, as neighborhoods seek to combat the impact of rampant substance abuse. The mandamus action currently before the Court brings front and center many of the unique legal questions and challenges courts will undoubtedly be asked to resolve as local governments across the country seek redress. The nature and character of the relief sought in the current action does not easily lend itself to clear application of the legal theories of recovery that have governed public nuisance claims for decades. Instead, as is clearly demonstrated by the facts and legal theories presented in this matter, the lines between injunctive and monetary damages – indeed the lines between legal and equitable theories of recovery – are blurred. In applying the traditional theories of public nuisance to the present case, Plaintiffs' efforts to neatly package the requested recovery as "injunctive" relief equates to the proverbial conundrum of attempting to place a square peg into a round hole.

1

Indeed, the majority clearly recognizes that this matter is not simply a nuisance action but instead includes theories of recovery that so significantly overlap with other monetary and legal causes of action as to require a jury trial. I fully agree with the majority's conclusion that, to proceed as if this case is purely a nuisance action, would deprive Defendants of their fundamental right to have the intertwined claims against them determined by a jury.

However, having determined that Plaintiffs' public nuisance and legal claims are so intertwined that a jury trial is necessary to protect the fundamental rights of Defendants, the majority has inexplicably denied the same Defendants their statutory right to allocate fault pursuant to West Virginia Code § 55-7-13a to 13d (2015 & 2016), (hereinafter, the "2015 Act"). Accordingly, I write separately to concur in the majority's finding that there must be a jury trial and to dissent as to the majority's denial of a writ of prohibition enjoining the Panel from precluding application of the 2015 Act and striking Defendants' Notices of Non-Party Fault.

The 2015 Act encompasses House Bill 2002 which was signed into law on March 5, 2015 and became effective on May 25, 2015. The 2015 Act abolished joint and several liability and adopted comparative fault standards. Even prior to its effective date, this Court recognized that the 2015 Act comprised "a series of new statutes which in fact do purport to fully occupy the field of comparative fault and the consideration of 'the fault of parties and nonparties to a civil action[.]'" *Modular Bldg. Consultants of W. Virginia,*

*Inc. v. Poerio, Inc.*, 235 W. Va. 474, 486 n.12, 774 S.E.2d 555, 567 n.12 (2015).

Specifically, the 2015 Act provides:

> In any action based on tort or any other legal theory seeking damages for personal injury, property damage, or wrongful death, recovery shall be predicated upon principles of comparative fault and the liability of each person, including plaintiffs, defendants and nonparties who proximately caused the damages, shall be allocated to each applicable person in direct proportion to that person's percentage of fault.

W. Va. Code § 55-7-13a. As the majority opinion notes, the 2015 Act allows for "assessing percentages of fault" and mandates that the "'trier of fact shall consider the fault of all persons who contributed to the alleged damages,' including nonparties." (citations in majority opinion omitted). The import of this process is that "any recovery by a plaintiff shall be reduced in proportion to the percentage of fault chargeable to such nonparty." W. Va. Code § 55-7-13d(a)(3). This means that the 2015 Act expressly allows a party to assert an "empty-chair defense."

In order to determine if the claims asserted by Plaintiffs against Defendants are subject to the 2015 Act, it is useful for us to review the nature of such claims and the remedies demanded by the Plaintiffs. Plaintiffs have asserted that their claims are nuisance claims and have characterized the damages sought to be the costs of "abatement" of the nuisance rather than "damages." However, although the law relating to nuisance claims has been slowly evolving, the general principle is that the remedy for nuisance claims is the abatement of the nuisance itself, rather than monetary damages. Under the traditional definition of abatement, nuisance claims seek court intervention to require one party to stop

3

doing something that affects another. For example, when a business in and of itself is lawful, but the business activity materially disturbs another's use of their property, a court may enjoin the activity. *See* Syllabus Point 5, *Snyder v. Cabell*, 29 W. Va. 48, 1 S.E. 241 (1886). Examples of conduct that may be enjoined include merry-go-rounds, *see Town of Davis v. Davis*, 40 W. Va. 464, 466, 21 S.E. 906, 906 (1895), and loud singing, talking, dancing, and opening and shutting doors. *See Medford v. Levy*, 31 W. Va. 649, 651-52, 8 S.E. 302, 303-4 (1888).

As our law of nuisance has evolved, this Court has held that certain damages are recoverable in a nuisance claim:

> A court of equity, having jurisdiction in such case to abate the nuisance, may assess, and enter a decree for, such damages, whether the defendants be jointly or separately liable therefor, taking care to decree them on the basis of the legal liability of the parties; *but the jurisdiction so to do is merely incidental to the exercise of the jurisdiction to abate the nuisance*.

Syllabus Point 5, *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480 (1921) (emphasis added). However, the damages sought in this matter are not merely "incidental," but could total into the billions of dollars, making them not only consequential but monumental. Indeed, Plaintiffs do not ask that the manufacture, prescription, delivery, marketing, sale, and/or use of these products be enjoined in the State of West Virginia. Instead, they seek monetary compensation for the damages allegedly caused by Defendants.

4

This effort to characterize monetary damages as merely the cost of "abatement" has been discussed by at least one commentator, observing that:

> Plaintiffs who have sued based upon the theory of public nuisance have also generally mischaracterized the remedies available under public nuisance law. Although public nuisance law permits governments to abate public nuisances, the law does not traditionally award monetary damages as a legal remedy to government plaintiffs.

Nathan R. Hamons, *Addicted to Hope: Abating the Opioid Epidemic and Seeking Redress from Opioid Distributors for Creating A Public Nuisance*, 121 W. Va. L. Rev. 257, 268–69 (2018) (footnotes omitted). This not a new issue, as was recognized more than eighty years ago by the Tennessee Supreme Court:

> The term nuisance, in legal parlance, has a very broad and elastic signification. What is a nuisance must after all be determined upon the facts shown in any particular case. In the case before us, the theories of nuisance and negligence are so closely woven together in the pleadings and in the argument that it is difficult after all to determine which is the gravamen of the action. Both theories are relied upon and neither is wholly separate from the other.

*Davidson Cty. v. Blackwell*, 82 S.W.2d 872, 874 (1934).

The majority has correctly held that "Defendants have demonstrated that extraordinary relief is warranted to preserve their right to try Plaintiffs' *legal claims* to a jury. To the extent that the public nuisance liability determination and *Plaintiffs' legal claims* present common issues, the order of trial must be such that the jury first determines those common issues." (emphasis added). Moreover, the majority bases its decision to require a trial by jury, at least in part, on the fact that Plaintiffs essentially agree that there

5

is an overlap of their legal and equitable claims. The majority expressly finds that "[i]mportantly, Plaintiffs do not disagree with Defendants' characterization of the overlap of their public nuisance claims (liability only) and legal claims, nor do they contend that those other claims are equitable and not legal. And, they do not protest that the legal claims are entirely independent of their public nuisance claims (liability only)."

To the extent that Plaintiffs' complaints clearly allege overlapping legal and public nuisance claims, as the majority clearly found, they also clearly assert claims for damages that fall within the 2015 Act. However, the majority opinion lets stand the Panel's determination that as to the nuisance claims, because such claims are equitable in nature, the 2015 Act does not apply. As the majority cited, Plaintiffs' complaints allege several causes of action for which the factual bases are intertwined with their public nuisance claims. Similarly, Plaintiffs' demands for damages contained within their complaints intertwine the remedies sought for such claims. For example, in Paragraph 823 of the Complaint filed by the Doddridge County, Marion County, Monongalia County, Randolph County, and Upshur County Commissions, Plaintiffs seek:

DAMAGES

823. As a direct and proximate result of the Defendants' actions, conduct, and omissions, as set forth herein, Plaintiffs have suffered and continue to suffer injury and damages, including but not limited to, incurring excessive costs related to diagnosis, treatment, and cure of abuse and/or addiction or risk of addiction to opioids; bearing the massive costs of these illnesses and conditions by having to provide necessary resources for care, treatment facilities, and law enforcement

6

associated with opioid addiction, abuse and diversion; and property damage.

Significantly, the following paragraph of the County Commission Complaint, which appears to be directed primarily, if not entirely, to Plaintiffs public nuisance claim, demands as follows:

> 824. Plaintiffs have further suffered *economic and noneconomic damages*, including *damages* and costs necessary to eliminate the hazard to public health and safety and to abate, or cause to be abated, the public nuisance caused by the opioid epidemic, as well as any other *damage* as may be available under West Virginia law.

(emphasis added). The County Commission Complaint concludes by demanding both compensatory and punitive damages, as well as pre-judgment and post-judgment interest, costs and attorney fees, and "[a]ny and all further relief as a court and/or jury deem just and proper." Notably absent is any demand for specific performance or request that any action on the part of Defendants be enjoined or abated – demands that are traditional remedies in public nuisance actions.

Likewise, in the Complaint filed by and on behalf of various hospitals,[1] Plaintiffs seek an "Award [of] compensatory damages in an amount sufficient to fairly and

---

[1] On page "i" of the Table of Contents to the Hospital Complaint, the Plaintiffs are identified as: Appalachian Regional Healthcare, Bluefield Regional Medical Center, Charleston Area Medical Center, Davis Health System Affiliates, Grafton City Hospital, Grant Memorial Hospital, Greenbrier Valley Medical Center, Jackson General Hospital, Monongalia Health System Affiliates, Plateau Medical Center, Princeton Community Hospital, West Virginia University Health System, Wetzel County Hospital, and Williamson Memorial Hospital.

completely compensate Plaintiffs for all damages; treble damages; punitive damages; pre-judgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate." As for equitable relief, the Hospital Complaint seeks "equitable relief against Defendants as the Court should find appropriate, including disgorgement of illicit proceeds and other orders." In the Hospital Complaint, Plaintiff hospitals seek "compensatory damages . . . to compensate Plaintiffs."

Of particular note is the fact that, in Paragraph 824 of the County Commission Complaint, Plaintiffs state that they have suffered "economic and noneconomic damages" related to their public nuisance claim. Not only is Plaintiffs' use of the word "damages" significant, these demands track, almost verbatim, the definition of "Compensatory Damages" contained in the 2015 Act, which states: "'Compensatory Damages' means damages awarded to compensate a plaintiff for economic and noneconomic loss." W. Va. Code § 55-7-13b.

As cited by Defendants in their Response in Opposition to Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault, filed before the Panel below, the United States Supreme Court has held that the distinction between the term "damages" and other monetary relief is largely "semantic." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49 n.7 (1989). Further, the Supreme Court has also held that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has

8

traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).

The majority also discusses this Court's decision in *Realmark Dev., Inc. v. Ranson*, 214 W. Va. 161, 588 S.E.2d 150 (2003) when reaching its determination that Defendants are entitled to a jury trial. The holding in *Realmark,* however, also supports a finding that the 2015 Act applies in this case as well. *Realmark* involved a claim of unjust enrichment, which this Court found is "based on the principles of equity." *Id*., 214 W. Va. at 164, 588 S.E.2d at 153. However, the *Realmark* Court held that "the remedy sought in this case is a money judgment and, thus, is governed by law. In other words, 'unjust enrichment' … is but the equitable reason for requiring payment for value of goods and services received." *Id.*. Similarly, in the present case, the mere fact that Plaintiffs have characterized their demand for damages as "abatement" of a public nuisance does not diminish the fact that they are demanding compensatory damages as envisioned by the 2015 Act.[2]

---

[2] Plaintiffs also argue that the 2015 Act is inapplicable because their causes of action accrued prior to the effective date of the Act. However, if their causes of action accrued prior to the effective date of the 2015 Act, their claims may be time barred by the applicable statute of limitations. "Where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syllabus Point 11, *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002). Thus, if Plaintiffs are able to establish a continuing tort that brings their actions within the statute of limitations, the 2015 Act is applicable because the date the statute of limitations would run is after the effective date of the 2015 Act.

9

The majority is correct in its determination that the presence of overlapping legal and equitable claims removes this case from the traditional public nuisance scenario and requires that Defendants be afforded their fundamental right to a trial by jury. However, the majority's denial of those same Defendants' statutory rights to file notices of non-party fault and avail themselves of the provisions of the 2015 Act is inherently inconsistent with its holding that they are entitled to a jury trial. If, as the majority has determined, "Defendants have demonstrated that extraordinary relief is warranted to preserve their right to try Plaintiffs' legal claims to a jury," then such right to extraordinary relief should also extend to their statutory right, as part of such jury trial, to identify non-parties they believe may bear some responsibility for the actions alleged by Plaintiffs. This is particularly true in light of the fact that the damages alleged by Plaintiffs, despite their characterization of such damages as abatement, clearly fall within the definition of compensatory damages contained in the 2015 Act. Damages are damages and Plaintiffs seek to receive monetary compensation for their nuisance claims. There is no discernable distinction between damages sought in legal claims and damages sought in Plaintiffs' "equitable" claims for the purposes of the 2015 Act.

For the reasons stated above, the 2015 Act applies to Plaintiffs' claims at issue in this request for extraordinary relief and Defendants should be allowed to proceed to trial, allowing the jury to consider the notices of non-party fault they previously filed. Therefore, I respectfully concur with the majority's conclusion that Defendants are entitled

10

to a trial by jury of their public nuisance claims and I dissent as to the majority's denial of an extraordinary writ to prohibit the Panel from enforcing its order finding the 2015 Act to be inapplicable to Plaintiffs' public nuisance claims and striking Defendants' notices of non-party fault.

I am authorized to state that Chief Justice Jenkins joins me in this separate opinion.