542 S.E.2d 880

**REALMARK DEVELOPMENTS, INC., A West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Clyde W. RANSON, Jr., and Judith J. Ranson, Defendants Below, Appellants.**

No. 27755.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2000.

Decided Dec. 7, 2000.

Timothy J. LaFon, Esq., Diana Leigh Jacobs, Esq., Ciccarello, DelGiudice & LaFon, Charleston, West Virginia, Attorneys for Appellee.

Charles E. Hurt, Esq., Charleston, West Virginia, Attorney for Appellants.

PER CURIAM:

This is an appeal by Clyde W. Ranson, Jr. and Judith J. Ranson, his wife, from an order of the Circuit Court of Kanawha County granting Realmark Developments, Inc., summary judgment on a counterclaim which the Ransons interposed in an action brought by Realmark Developments, Inc.[1] On appeal, the Ransons claim that there were questions of material fact in the case relating to their counterclaim at the time the court entered summary judgment, and that under the circumstances, the court erred in granting summary judgment.

## I.

## FACTS

In 1991, the appellants, Clyde W. Ranson, Jr. and Judith J. Ranson, and the appellee, Realmark Developments, Inc., discussed the possibility of the Ransons leasing or purchasing a building located on Maryland Avenue in Charleston, West Virginia, from Realmark Developments, Inc.

At the conclusion of the discussions, it appears Realmark Developments, Inc., agreed to lease the building to the Ransons and to grant the Ransons an option to purchase it. It is the claim of the Ransons that Realmark Developments, Inc., additionally orally agreed that a portion of the rent paid by them under the lease would be applied toward the purchase price in the event they elected to exercise the option.

---

1. There is some suggestion that the Ransons' surname is actually "Ransom." For consistency sake, since they are called "Ranson" in the style of the case, as well as on various documents in the case, they will be referred to as "Ranson."

The discussions culminated in the Ransons and Realmark Developments, Inc., executing two documents which are of particular relevance to this proceeding. The first document was an undated "Proposed Lease Purchase Agreement." In this document, the Ransons leased, or agreed to lease, the premises under discussion for $2,800 a month, and Realmark Developments, Inc., granted, or agreed to grant, the Ransons an option to purchase the property. The option language did make reference to the fact that a portion of the rent could be applied toward the purchase price. It stated: "Purchase price shall be $255,000 with earnest money in the amount of $_____. One thousand dollars ($1,000) of monthly rent shall be applied to purchase price." This "Proposed Lease Purchase Agreement" was signed by Clyde W. Ranson and Frank S. Harden, "Vice President Realmark Developments, Inc."

The second document was a "Lease Agreement with Option to Purchase" dated May 31, 1991. Under this document, as under the "Proposed Lease Purchase Agreement," the Ransons agreed to pay $2,800 per month in rent. Paragraph 28 of this document, like the "Proposed Lease Purchase Agreement," granted the Ransons an option to purchase the real estate covered by the lease. This document, however, contained no language indicating that any portion of rent would be applied toward the purchase price of the property in the event the Ransons elected to purchase. It also differed from the "Proposed Lease Purchase Agreement" in that it set the purchase price at $195,000, rather than $255,000. The language establishing the option to purchase specifically stated:

The option shall arise and exist only during the last 90 days of the initial term of this lease. If during such 90 days the Lessee, gives Lessor written notice of the exercise of such option, then on a mutually convenient date during the last 15 days of the initial term hereof, the Lessor shall convey the property to Lessee by General Warranty Deed with good and marketable title, and the Lessee shall pay lessor, the sum of One Hundred Ninety Five Thousand Dollars ($195,000.00) cash or other immediately bankable funds. No rebate of rent shall be made for any unexpired portion of the initial term.

Although this document contained a clause which stated that it included the entire agreement between the parties, the same clause indicated that the agreement could be amended or modified by the parties in writing. This document was signed by Clyde W. Ranson and his wife and by the President of Realmark Developments, Inc.

The Ransons took possession of the premises, and, according to their evidence, made $100,000 or more in improvements to the property. They remained in possession for the full five-year initial lease term. During the last 90 days of that period, they did not provide Realmark Developments, Inc., with a written notice that they desired to exercise the purchase option. At the expiration of the five-year initial term, they did not vacate the premises. When they did vacate the property, approximately a year later, on March 24, 1997, they, according to Realmark Developments, Inc., owed $27,238.64 in rent arrearages.

Subsequent to the Ransons' vacating the premises, Realmark Developments, Inc., on June 5, 1997, sold the premises to a third party for $270,000.

After selling the premises, Realmark Developments, Inc., instituted the present lawsuit in the Circuit Court of Kanawha County. In its complaint, Realmark Developments, Inc., sought the $27,238.64 in rent arrearages which the Ransons owed up until the time they vacated the premises, as well as the rent which they would have paid until Realmark Developments, Inc., sold the premises. Realmark Developments, Inc., also sought a sum for unpaid real estate taxes which the Ransons were required to pay under the "Lease Agreement with Option to Purchase."

Following the filing of Realmark Developments, Inc.'s, complaint, the Ransons filed an answer and denied that they were indebted to Realmark Developments, Inc. They also filed a counterclaim in which they asserted that their agreement relating to the possible purchase of the property had contained an oral provision that Realmark Developments, Inc., would assist in the financing of the purchase, and that in reliance upon the promise, they had expended more than $100,000 in improving the building located on the leased premises. They further stated

that at the time the option was exercisable, they were ready and able to purchase the premises from Realmark Developments, Inc., with Realmark Developments, Inc., assisting in the financing of the purchase, but that Realmark Developments, Inc., had refused to finance the purchase according to its promise, and instead Realmark Developments, Inc., had sold the property on June 5, 1997 for the sum of $270,000, with $100,000 of that amount due solely to the improvements which they had placed upon the premises. They claimed that they had been damaged by Realmark Developments, Inc.'s, breaching of its promises to them, and they sought damages from Realmark Developments, Inc.

In an amendment to the counterclaim, the Ransons elaborated upon their unjust enrichment claim. They stated:

In accordance with the agreement by and between the parties ..., the defendants [the Ransons] then undertook and did perform work, labor and materials on the plaintiff's building at the fair and reasonable sum of at least $142,844.02, which defendants would not have done but for the plaintiff's assurance to them, not only that the plaintiff would sell the property to the defendants at the agreed amount but that plaintiff would finance the purchase of the same for the defendants. The plaintiff then sold the property to someone else for a gain of $100,000.00 due solely to the valuable improvements to the premises made by defendants as a result of the agreement between the parties for the purchase and financing of the property and defendants have not been paid or reimburse or in any way credited for the services, labor and materials performed by them on the plaintiff's property, as a result of which the plaintiff has been unjustly enriched at the expense of the defendants.... Plaintiff has received, used and enjoyed the services, work, labor and materials performed and furnished by defendants for plaintiff on plaintiff's building, which plaintiff fully knew and was aware was being performed. As a result of the agreement between the parties aforesaid and with full knowledge of the improvements being made to its property by defendants, plaintiff did not advise defendants to cease making said improvements but rather accepted the same and then thereafter determined not to finance the purchase of the property by defendants from plaintiff in order to realize the substantial increased value of the building as a result of the efforts of defendants, which constitutes a fraud perpetrated upon defendants by plaintiff.

In answer to the counterclaim and amended counterclaim, Realmark Developments, Inc., denied that it had orally agreed to finance the purchase of the property or to assist in the financing of the purchase of the property in the event the Ransons decided to exercise their option.

Subsequently, discovery was conducted in the case, and Realmark Developments, Inc., moved for summary judgment on the Ransons' counterclaim. Among other points, Realmark Developments, Inc., took the position that the option language of the "Lease Agreement with Option to Purchase" clearly and unambiguously indicated that the only way the option could be purchased was by the Ransons giving Realmark Developments, Inc., written notice of the exercise of the option within the last 90 days of the original term of the lease, and that the Ransons did not do this.

After taking the motion for summary judgment under consideration, the Circuit Court of Kanawha County, on June 15, 1999, granted Realmark Developments, Inc.'s, motion for summary judgment. The court found that the Ransons' option to purchase was only exercisable in the last 90 days of the initial term of the lease by the Ransons giving written notice to Realmark Developments, Inc. The court further found that the last 90 days of the initial term of the lease would have been from March 2, 1996 until May 30, 1996, and that during that period, no written exercise of the option was prepared or transmitted by the Ransons. The court concluded that the Ransons' claim that they were deprived of their exercise of the option by Realmark Developments, Inc.'s, failure to finance the property was without merit. The court accordingly granted Realmark Developments, Inc.'s, motion for summary judgment on the Ransons counterclaim.

On January 10, 2000, the circuit court entered an additional order in which the court

found that the Ransons, in their requests for admissions, owed rent in the amount of $21,638.64 at the time they vacated the leased premises and that they had also failed to pay real estate taxes for the years 1995 and 1996 as required by the "Lease Agreement with Option to Purchase." Accordingly, the court granted Realmark Developments, Inc., judgment for the rent and taxes due.

## II.

## STANDARD OF REVIEW

■ This Court has indicated that a summary judgment should be reviewed *de novo*. *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). The Court has also indicated that: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Lastly, the Court has stated that in determining whether there is a genuine issue of material fact in a case, the Court will construe the facts in the light most favorable to the losing party. *Alpine Property Owners Association, Inc. v. Mountaintop Development Company*, 179 W.Va. 12, 365 S.E.2d 57 (1987).

## III.

## DISCUSSION

After examining the pleadings filed in the present case, the Court believes that the Ransons in their counterclaim and amended counterclaim reasonably asserted two causes of action. The first, a direct breach of contract action, was that Realmark Developments, Inc., breached its contract with them when it indicated that it would not credit them with a portion of the rent paid toward the purchase of the premises in question.

The second cause of action was one for unjust enrichment. In essence, the Ransons claimed that in reliance upon the promise of Realmark Developments, Inc., to assist in financing the purchase of the property, they had expended large sums in improving it and that ultimately, because of their expenditures, Realmark Developments, Inc., had sold the property for considerably more than it would have otherwise sold for.

■ In this Court's view, the trial court did not err in granting summary judgment to Realmark Developments, Inc., on the direct breach of contract claim. The trial court found, and the testimony of Clyde Ranson given during his deposition shows, that the Ransons did not provide Realmark Developments, Inc., with a written notice of their desire to exercise the option to purchase the property within the final 90 days of their initial lease term. This Court believes that a fair reading of the documents and evidence in the case shows that such a notice was an expressed condition precedent to the Ransons being entitled under their express contract theory to purchase the property and thereupon receive the credit which they claim they were denied and that since the facts indisputably show that they did not meet the condition, they are not entitled to legal damages from Realmark Developments, Inc., for its failure to extend them the credit, even if the promise to extend such credit could be considered a part of the parties' contract.

■ The unjust enrichment claim presents a different problem. The law of unjust enrichment indicates that if one person improves the land of another either through the direction of services to the land, or through the affixation of chattels to the land, that person is entitled to restitution for the improvements if certain other circumstances are present. See, Restatement, *Restitution* § 53 (1937).[2] The Court has also indicated that if benefits have been received and re-

---

2. Restatement, *Restitution* § 53 (1937), provides:

(1) A person who has rendered service to another or service which inures to the other's benefit or who has affixed chattels to the land or has improved the chattels of another, is entitled to restitution therefor if the services were rendered, or the chattels affixed, or the improvements made:

(a) because of a fraudulent misrepresentation of law by the other, or because of an innocent misrepresentation of law by the other upon which the one rendering the services justifiably relied, or

(b) to obtain the performance of an agreement made with the other therefor, not operative as a contract, or voidable as a contract and

tained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value. *Copley v. Mingo County Board of Education,* 195 W.Va. 480, 466 S.E.2d 139 (1995).

■ There is evidence in the present case which could support a finding that the Ransons made $100,000 or more in improvements to the premises in question, and that this amount was more than half of what Realmark Developments, Inc., in the "Lease Agreement with Option to Purchase" agreed to sell the entire property for. It also appears that, plausibly as a result of the improvements, Realmark Developments, Inc., sold the property for substantially more than it had agreed to sell the property prior to the improvements. This evidence clearly could support the conclusion that Realmark Developments, Inc., was enriched by the improvements which the Ransons made to the property.

The testimony of Clyde Ranson suggests that he believed that he and his wife would receive assistance in financing the property, and a reasonable implication of his testimony is that reliance upon this belief influenced their decision to improve the property.[3]

As indicated in Restatement, *Restitution* § 53(3), where a person acquires an interest in land as a result of an agreement with the owner, such as the leasehold interest ac-

quired by the Ransons in the present case, under a mistake of law, that person is entitled to restitution for improvements which he places on the land as a result of the mistake. In the present case, it is the Ransons' claim that they believed that Realmark Developments, Inc., was legally obligated to assist them in financing their purchase of the property in question. While they may have been legally mistaken, their belief, if factually established, may entitle them to restitution under the restitution count of their amended counterclaim.

In light of all this, the Court believes that there is a question as to exactly what representations were made to the Ransons, and what their beliefs were at the time they made the improvements. At the very least, the Court believes that further inquiry concerning the facts is desirable to clarify whether it would be inequitable or unconscionable to permit Realmark Developments, Inc., to avoid payment for the improvements placed on the property by the Ransons. Under such circumstances, Syllabus Point 3 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* indicates that summary judgment is improper.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is reversed as to the unjust enrichment claim, and the case is remanded for trial on that point. The judgment is affirmed as to the other matters in the case.[4]

avoided by the other party after the services were rendered, the transferor erroneously believing because of a mistake of law that the agreement bound the other, or

(c) in the discharge of a duty of the other or in the release of the other's property from an adverse interest, under the conditions stated in § 54.

(2) A person who, because of mistake of law, reasonably but erroneously believing that he, or a third person, on whose account he acts is the owner:

(a) causes improvements to be made upon the land of another, is entitled to restitution for the value of the labor and materials used therein to the extent that the land is increased in value if the mistake is reasonable, as a condition to recovery by the owner of the land in equitable proceedings or in an action of trespass or other action for the mesne profits, or

(b) adds value to the chattels of another, is entitled to have the added value up to the

value of the labor and materials used deducted from the damages if sued for their conversion.

(3) A person who acquires an interest in land or chattels as a result of an agreement with the owner made under a mistake of law and avoided by the owner is entitled to restitution for the value of services rendered in their preservation or in making appropriate improvements thereon.

3. The Ransons' claim that they believed that financing assistance would be provided is supported somewhat by the "Proposed Lease Purchase Agreement, signed by an officer of Realmark Developments, Inc."

4. The Court notes that the circuit court's finding that the Ransons admitted that they owed rent and taxes at the time they vacated the premises was supported by the undisputed facts of the case. Under the circumstances, the circuit court

Reversed, in part, affirmed, in part, and remanded.

---

properly granted summary judgment to Realmark Developments, Inc., for the rent and taxes due.