IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0510

_____

FILED
**November 18, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

GULFPORT ENERGY CORPORATION
Defendant Below, Petitioner

v.

HARBERT PRIVATE EQUITY PARTNERS, LP,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Wood County
The Honorable Jason A. Wharton, Judge
Civil Action No. 17-C-65

REVERSED AND REMANDED

_____

Submitted: October 27, 2020
Filed: November 18, 2020

J. Kevin West, Esq.
Steptoe & Johnson PLLC
Columbus, Ohio

Melanie Morgan Norris, Esq.
Steptoe & Johnson PLLC
Wheeling, West Virginia

Counsel for Petitioner Gulfport Energy
Corporation

Robert L. Bays, Esq.
Bowles Rice LLP
Parkersburg, West Virginia

Counsel for Respondent Harbert Private
Equity Partners, LP

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review."  Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.      The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.

3.      As a species of quasi contract relief, unjust enrichment does not exist to provide an alternative means of recovery for breach of contract, nor does it exist to reduce contract disputes to a question of whether one party benefitted from the other party's performance.

**Armstead, Chief Justice:**

In 2012, Gulfport Energy Corporation ("Gulfport") entered into a contract whereby Central Environmental Services, LLC, ("CES")[1] agreed to provide transportation, waste disposal, and other services at Gulfport's wells. When this business relationship ended in 2015, some of CES's invoices remained unpaid. CES sued Gulfport in the Circuit Court of Wood County, alleging that Gulfport breached the contract and was unjustly enriched by CES's performance. After a bench trial, the circuit court awarded CES $144,037.75, and Gulfport filed this appeal. Gulfport argues that the circuit court erred by awarding damages for unjust enrichment when the unpaid invoices were for services provided under the parties' contract.

Because we agree that a court may not award damages based on both unjust enrichment and breach of contract where such theories of recovery arise from the same set of facts, we reverse the circuit court and remand this case to the circuit court for further action in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gulfport is an oil and gas producer with operations in West Virginia. On May 21, 2012, Gulfport entered into a Master Service Agreement ("MSA") with CES. At the time, CES provided an array of transportation, waste disposal, and other environmental services. Under the parties' arrangement, Gulfport would request certain services, and

---

[1] After Gulfport filed this appeal, Harbert Private Equity Partners, LP, advised the Court that it had acquired CES and requested to be substituted as the respondent in this matter.

1

CES would provide them. Afterward, CES would submit an invoice for payment. According to the MSA, invoices were to be submitted "as [w]ork is completed" (unless Gulfport approved a different arrangement) and were required to show "appropriate approvals of [Gulfport] personnel[.]"

When the parties ceased doing business together in 2015, a substantial number of invoices remained unpaid. The parties attempted to resolve their differences and, as a result of these efforts, Gulfport paid CES approximately $100,000 for disputed invoices that it found were substantiated. Nevertheless, some disputed invoices remained, and in 2017, CES sued Gulfport for breach of contract. CES later amended its complaint to add a cause of action for unjust enrichment. Both causes of action were based on the same alleged injury: Gulfport's failure to pay invoices valued at $191,287.15. None of these invoices, however, reflected approval by Gulfport personnel.

After discovery, the circuit court conducted a one-day bench trial. CES offered testimony from Jeff Harper, its chief executive officer. Regarding the missing Gulfport approvals, Mr. Harper explained that the parties worked around the clock and that Gulfport employees who requested services were not always available to sign or stamp invoices when CES sought approval. According to Mr. Harper, sometimes the employees were not on shift and at other times they had left the company. Mr. Harper said that Gulfport employees were reluctant to sign for services that someone else had requested. He also testified that CES made additional efforts to obtain the appropriate approvals from Gulfport, and he believed that Gulfport paid at least some unsigned invoices.

2

Mr. Harper's testimony also addressed Gulfport's claim that the disputed invoices were "stale" as untimely submitted under the terms of the MSA. Though he did not separately address each invoice, he testified that in the normal course of CES business, invoices were generated soon after services were rendered. On cross-examination, however, he conceded that he had no documentary evidence to establish when the invoices were submitted to Gulfport.

When CES rested its case, Gulfport moved for judgment as a matter of law under Rule 52(c) of the West Virginia Rules of Civil Procedure.[2] The circuit court found that there was sufficient evidence to go forward with the trial and denied the motion.

In its case in chief, Gulfport offered two witnesses, Elaina Moscato, its drilling engineer technician, and Roger Wilson, its billing and operations manager. Ms. Moscato testified that she and others had spent "upwards of 60" hours going over CES's invoices and other evidence and, setting aside problems of timeliness and missing

---

[2] West Virginia Rule of Civil Procedure 52(c) [1998] provides that:

> [i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

signatures, could only validate invoices worth approximately $33,000.[3]  She claimed that a relevant Gulfport employee, which she referred to as a "company man,"[4] was always onsite and always available and that a CES driver could contact the guard shack or someone at Gulfport's office if he could not find a company man.  She also claimed that CES representatives attended meetings where invoice policies were explained to them.  Mr. Wilson testified that the disputed invoices were untimely.  He also testified that Gulfport company men had authority to refuse approval in certain circumstances.

During trial, CES conceded that it had no documents to support disputed invoices for $39,042.90 and that one invoice for $5,692.00 was incorrect.  The circuit court subsequently determined that some invoices charged for equipment and materials that were not reimbursable under the MSA.  The circuit court deducted $2,514.50 for those charges and, finding liability, awarded CES judgment for $144,037.75.

The circuit court memorialized its findings of fact and conclusions of law in a trial order that quotes the MSA at length and applies its provisions.  However, the trial order does not find or conclude that Gulfport breached the MSA.  Instead, the order finds "that the work set forth in the invoices . . . was provided for the benefit of Gulfport Energy" and cites *Realmark Developments, Inc. v. Ranson*, 208 W. Va. 717, 542 S.E.2d 880 (2000) (per curiam), for the proposition that "[u]nder the law of unjust enrichment, if benefits have

---

[3] These invoices were in addition to the invoices worth approximately $100,000 that were validated and paid before litigation.

[4] Ms. Moscato testified that a "company man" is a "consultant" who works for Gulfport at a Gulfport drilling site.

4

been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor[], the law requires the party receiving the benefits to pay their reasonable value."[5]

Gulfport appeals from the circuit court's May 1, 2019 trial order.

## II. STANDARD OF REVIEW

In this appeal, we review a circuit court order that was entered following a bench trial.

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[5] Specifically, the *Realmark* court explained:

> The law of unjust enrichment indicates that if one person improves the land of another either through the direction of services to the land, or through the affixation of chattels to the land, that person is entitled to restitution for the improvements if certain other circumstances are present. The Court has also indicated that if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value.

208 W. Va. at 721–22, 542 S.E.2d at 884–85 (citation and footnote omitted).

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).  With this standard of review in mind, we will proceed to consider Gulfport's assignments of error.

## III.  ANALYSIS

In this appeal, Gulfport raises five assignments of error.  Gulfport contends that the circuit court erred (1) by awarding judgment based on unjust enrichment, (2) by basing its decision on *Realmark*, 208 W. Va. 717, 542 S.E.2d 880, (3) by denying Gulfport's motion for judgment as a matter of law, (4) by applying West Virginia law, and (5) by failing to balance the equities when it awarded equitable relief.  We will combine the first two assignments of error and address them together.

### A.  Unjust Enrichment

Gulfport contends that the circuit court erred by awarding damages based on unjust enrichment.  As Gulfport observes, the amended complaint in this matter sets forth two causes of action, breach of contract and unjust enrichment.  Gulfport argues that these causes of action are incompatible because "[t]he subject matter of CES'[s] claim against Gulfport—namely submission and payment of invoices for roll-off and transportation services allegedly provided to Gulfport—falls precisely within the scope of the MSA." According to Gulfport, the "law preclude[s] . . . recovery under a theory of unjust enrichment where an express contract exists[.]"

CES responds that the circuit court actually awarded damages for breach of contract.  According to CES, the circuit court assessed the breach of contract claim and,

after rejecting Gulfport's defense that the invoices were not signed, awarded judgment to CES based on a determination that Gulfport "failed to perform its contractual obligations[.]"  Unjust enrichment—according to CES—was merely an alternative basis for awarding judgment: "The court noted in its opinion that it believed . . . that unjust enrichment would, *if applied*, support the recovery."  (Emphasis added.)  Gulfport also contends that, "[b]ecause both parties alleged a breach of contract, Judge Wharton *could have found* the contract to be unenforceable, which would have . . . allowed CES to recover under quantum meruit."  (Emphasis added.)

Having reviewed the circuit court's trial order, we find that CES is mistaken. *First*, the circuit court did not find that the MSA was unenforceable; on the contrary, it found that CES provided services "pursuant to the terms of" the MSA and quoted the MSA at length.  In addition, the circuit court did not find that Gulfport breached the MSA, nor did it rule on Gulfport's defense that the invoices were not signed.  The word "breach" never appears in the circuit court's order, nor does the word "violate" or "violation," except in reference to costs that *CES* improperly billed to Gulfport.  The circuit court did find that Gulfport employees "were somewhat transitory in nature and could not always be found for the approvals required by" the MSA.  However, this is not the same thing as finding that CES *could not obtain* necessary approvals or the same thing as concluding that

7

Gulfport breached the MSA by preventing CES from performing this aspect of its duties.[6]

Finally, the circuit court's order appears to say that it was granting judgment based, in part, on unjust enrichment. In each instance where the circuit court awarded money based on disputed invoices, it justified this result with an express finding that the work reflected in the invoices was done "for the benefit of Gulfport." The circuit court repeated this conclusion at the end of the trial order, immediately before it invoked *Realmark* and its rule that unjustly enriched parties must pay "reasonable value" for benefits received. The circuit court concluded that "the reasonable value of the services was $144,037.75."

---

[6] As noted above, Gulfport contends that the circuit court should have granted judgment as a matter of law. In support of this claim, Gulfport asserts that Mr. Harper admitted that the disputed invoices did not reflect Gulfport approval and that approvals could be obtained at Gulfport's office. When a circuit court grants or denies a motion for judgment as a matter of law, we view "the evidence in the light most favorable to the nonmovant party[.]" Syl. Pt. 1, in part, *Waddy v. Riggleman*, 216 W. Va. 250, 606 S.E.2d 222 (2004). We refuse to sustain an order granting judgment as a matter of law unless "only one reasonable conclusion as to the verdict can be reached." *Id*. Mr. Harper explained that the relevant Gulfport employees were sometimes unavailable or reluctant to sign for services that other Gulfport employees had requested. He also testified that CES made additional efforts to obtain the appropriate approvals from Gulfport and that he believed that Gulfport paid at least some unsigned invoices. Viewing Mr. Harper's testimony in the light most favorable to CES, we find that this testimony could suggest that Gulfport's employees prevented CES from satisfying a necessary contingency for payment under the MSA or that Gulfport and CES modified the terms of the MSA by their course of conduct. We have held that "[a] party to a contract is not discharged by a breach, occasioned by its own failure of duty." *Ashland Coal & Coke Co. v. Hull Coal & Coke Corp.*, 67 W. Va. 503, 516, 68 S.E. 124, 129 (1910). We have also held that "[m]odification of a contract may be implied from a subsequent agreement or the conduct of the parties." Syl. Pt., *Azure v. Hunter*, 101 W. Va. 191, 132 S.E. 726 (1926). Though we do not decide whether CES has proved these defenses to Gulfport's motion, we do find that "reasonable minds could differ as to the importance and sufficiency of" Mr. Harper's testimony. *Waddy*, 216 W. Va. at 252, 606 S.E.2d at 224, syl. pt. 1, in part. Accordingly, we find that the circuit court did not err when it refused to grant Gulfport's motion for judgment as a matter of law.

8

Because it appears that the circuit court awarded judgment based, at least in part, on unjust enrichment where the litigants were parties to an express contract, we conclude that the circuit court's order must be reversed. We have held that "an unjust enrichment claim is inconsistent with a contractual dispute." *Hanlon v. AXA Equitable Life Ins. Co.*, No. 15-0337, 2016 WL 2968990, at *3 (W. Va. May 20, 2016) (memorandum decision). Indeed, the law is clear that "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018); *accord Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter[.]"); Syl. Pt. 4, *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947) ("In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return."); *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 27, 374 P.3d 820, 828 ("[A] party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract.");[7] *Knight Renovations, LLC*

---

[7] As noted above, Gulfport also contends, based on a choice-of-law provision contained in the MSA, that the circuit court erred by failing to apply Oklahoma law to the parties' dispute. However, Gulfport did not raise this objection before the circuit court, and we refuse to consider it for the first time on appeal. *Barney v. Auvil*, 195 W. Va. 733, 741, 466 S.E.2d 801, 809 (1995) ("Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered.").

*v. Thomas*, 525 S.W.3d 446, 454 (Tex. App. 2017) ("An action for quantum meruit generally cannot be brought when an express contract covers the materials or services provided."). This rule flows from the very nature of unjust enrichment claims, which can "only exist in the absence of an agreement." *Ohio Valley Health Servs. & Educ. Corp. v. Riley*, 149 F. Supp. 3d 709, 721 (N.D.W. Va. 2015). As the Supreme Court of Pennsylvania explained in *Wilson Area School District v. Skepton*, "parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations." 586 Pa. 513, 521, 895 A.2d 1250, 1254 (2006) (quoting *Curley v. Allstate Ins. Co.,* 289 F.Supp.2d 614, 620-21 (E.D.Pa.2003) (material in brackets inserted by the *Wilson Area* court). In light of this clear authority, we now hold that the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.[8]

---

[8] We recognize that "[a] party claiming an alternative right of recovery may assert and prosecute both claims in the same action, leaving it to the court and jury to determine which he is entitled to, if either, and proof of one of them constitutes no abandonment of the other." *Cochran v. Craig*, 88 W. Va. 281, 106 S.E. 633, syl. pt. 5; *see, e.g.*, *Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 513–14 (S.D.N.Y. 2001) ("Where the complaint asserts claims on theories of both contract and quantum meruit and there is a genuine dispute as to the existence of a contract, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted on both theories.") But a plaintiff cannot recover damages under both theories.

Returning to the facts of this case, we find that the substance of CES's unjust enrichment claim falls squarely within the subject matter of the MSA. Both theories of recovery asserted by CES arise from Gulfport's failure to pay for services rendered under the MSA, and based on the circuit court's order, payment for these services was the only relief considered by the court and the only relief that it granted.[9] Under these circumstances, the MSA established the parties' rights and duties and provides an adequate remedy at law for breach of contract. We additionally hold that, as a species of quasi contract relief, unjust enrichment does not exist to provide an alternative means of recovery for breach of contract, nor does it exist to reduce contract disputes to a question of whether one party benefitted from the other party's performance. Accordingly, we find that CES's unjust enrichment claim was entirely eclipsed by its claim for breach of contract, and no award of unjust enrichment damages was possible.

Our decision in *Realmark*, 208 W. Va. 717, 542 S.E.2d 880, does not compel a different conclusion. In *Realmark*, the parties entered into a written lease agreement that provided an option to purchase. *Id*. at 719, 542 S.E.2d at 882. The tenants made substantial improvements to the property, but they failed to provide written notice to the landlord that they wished to exercise their option. *Id*. After the term ended and the tenants eventually surrendered the property, the landlord sold the property and sued the tenants for unpaid

---

[9] The amount that the circuit court awarded ($144,037.75) plus the amounts that the circuit court expressly refused to award ($39,042.90, $5,692.00, and $2,514.50) equal $191,287.15, which is the exact amount that CES requested in the amended complaint for both breach of contract and unjust enrichment.

11

rent and taxes. *Id*. The tenants counterclaimed, arguing that the landlord perpetrated a fraud on them by making an oral promise to finance their purchase of the property and then refusing to provide financing and selling the property for a substantial profit. *Id*. at 719-20, 542 S.E.2d at 882-83. The landlord denied making such a promise, and the circuit court granted summary judgment for the landlord. *Id*. at 720, 542 S.E.2d at 883.

On appeal, we reversed the circuit court and remanded the case for trial, noting that a mistake of law can provide a basis for restitution damages. *Id*. at 722, 542 S.E.2d at 885. We wrote,

> In the present case, it is the Ransons' claim that they believed that Realmark Developments, Inc., was legally obligated to assist them in financing their purchase of the property in question. While they may have been legally mistaken, their belief, if factually established, may entitle them to restitution under the restitution count of their amended counterclaim.

*Id*.

Unlike *Realmark*, this is not a case where CES claims that it was defrauded by Gulfport or held a mistaken belief about Gulfport's obligations under the MSA. This is a straightforward dispute about whether the MSA requires Gulfport to pay CES for the work described in the disputed invoices. Accordingly, *Realmark* has no bearing on the parties' dispute, and the circuit court erred when it invoked *Realmark* to support an award, based in part, on unjust enrichment.[10]

---

[10] Because we find that the circuit court erred by awarding damages based in part on unjust enrichment, we need not consider whether the circuit court also erred by

(continued . . .)

It is evident that the circuit court based its holding, at least in part, on the theory of unjust enrichment and, as we have discussed above, such holding cannot stand when the court also makes reference to the contract between the parties. Accordingly, we reverse and remand this matter to the circuit court. We direct the circuit court to clarify its holding and make findings of fact and conclusions of law, including findings regarding the parties' respective duties and right to recovery, if any, pursuant to the MSA.

## IV. CONCLUSION

Based on the foregoing, we reverse the circuit court's award of unjust enrichment damages, and we remand this case to the Circuit Court of Wood County for further action in accordance with this opinion.

Reversed and Remanded.

---

failing to balance the equities. Moreover, because we are reversing the circuit court's order and remanding this matter for further action, we decline to address Gulfport's remaining assignments of error.