# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**May 23, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JAMES WILEY D/B/A WILEY'S CONSTRUCTION,**
**Defendant Below, Petitioner**

**v.)  No. 23-ICA-143**          (Cir. Ct. Mercer Cnty. No. CC-28-2018-C-309-WS)

**CHRISTOPHER HAYNES,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner James Wiley d/b/a Wiley's Construction ("Wiley") appeals the Circuit Court of Mercer County's order denying his Rule 59 motion for a new trial dated March 9, 2023. Respondent Christopher Haynes ("Haynes") filed a timely response.[1] The issue on appeal is whether the circuit court erred in concluding that a "finished basement" was included in the terms of the contract between the parties and awarding damages based on that conclusion.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case involves a contract dispute, specifically whether the terms of the contract included a finished basement. In 2014, Haynes purchased a piece of real estate in Mercer County. In 2016, Haynes, with the assistance of his parents, purchased a "log kit" for $16,500, which included house plans and instructions on how to construct the residence.

It is undisputed that at some point in April or early May of 2017, Haynes, his father, and Wiley met at the site where the residence was to be built to discuss the nature and cost of construction. At that time, Haynes gave Wiley the house plans (i.e., log kit). The

---

[1] Mr. Wiley is represented by Tracey A. Rohrbaugh, Esq. Mr. Haynes is represented by Anthony R. Veneri, Esq.

conversation moved to a nearby store, and there Wiley drew a diagram of the basement that would be finished.[2]

On May 24, 2017, Haynes and Wiley entered into the initial contract, which included partial construction of the dwelling. This initial contract only required Wiley to construct the exterior of the log structure on a basement foundation for a price of $33,000. Further, the contract provided that Wiley would secure the costs of constructing the foundation (footers and floors) from Reynolds Construction, obtain the costs for the electrical work from Vest Electric, provide a bid for the plumbing of the residence, and obtain a bid from Compton Construction for the sheetrock work in the residence.

At some point after entering the contract, Haynes took the contract to MCNB Bank seeking a construction loan. However, the bank would not accept a contract for partial construction. The bank required a complete, "turn-key" contract, so that upon completion of the contract, the residence would be a full and complete structure. On August 10, 2017, Wiley drafted an "Addendum" to the original contract. With the Addendum the contract provided for a complete, "turn-key" construction of the residence for a price of $195,000.[3] Notably the August 10, 2017, contract stated:

> This Addendum of existing contract dated May 24, 2017.
> This Addendum while consist of Exterior and Interior of Total of $195,000
> with see draw schedule dated May 24, 2017.[4]

With the turn-key contract in hand, and MCNB's pre-construction appraisal of the completed structure which came in at $275,000, Haynes was able to secure a construction loan for $202,500. After the deduction of loan costs, Haynes was left with $196,898.69 to spend on the construction of the residence.

In August 2017, once Reynolds Construction laid the foundation, Wiley began construction on the property. The first disbursement by MCNB occurred on August 21, 2017, when $10,506.54 was paid to Lowe's for the roof trusses. However, in March 2018,

---

[2] Wiley admits to drawing the diagram, however, at trial neither party entered the drawing into evidence.

[3] Attached to the August 10, 2017, contract was a "Schedule of Disbursements" pursuant to the percentages of completion that was generated by Wiley, which also included a specific draw schedule for the completion of the residence. The disbursement schedule and draw schedule were back dated by Wiley to the May 24, 2017, contract.

[4] Under both the May 24, 2017, and August 10, 2017, contracts Wiley was to complete all work in a "workmanlike manner according to standard practices."

after about seven months of working on the residence, Haynes relayed to Wiley that he had run out of money and could no longer pay him. The last disbursement by MCNB occurred on March 22, 2018, for $3,291.30 to Lowe's for fans and other items.

On November 8, 2018, Haynes filed suit against Wiley in Mercer County Circuit Court alleging that Wiley breached the contract between the parties because Wiley failed to provide him with a complete log home for the total contract price of $195,000. On November 20, 2018, Wiley answered and denied the complaint and filed a counterclaim for breach of contract and unjust enrichment. A bench trial was conducted on the three nonconsecutive days in 2022: January 14, January 28, and February 15.

On June 7, 2022, following the bench trial, the circuit court entered its judgment order, concluding that by a preponderance of the evidence, the written contract between Wiley and Haynes included Wiley building the full interior and exterior of the residence including a finished basement for the sum of $195,000. The court found that the written contract incorporated not only all the work included on the May 24, 2017, contract, but also the two-page disbursement schedule that included the foundation, framing, plumbing, wiring, sheetrock, roof, floors, painting, electrical fixtures, appliances, plumbing fixtures, lot preparation, decks, windows and doors, gutters, septic system, grading and landscaping, and other construction.

The circuit court concluded that by a preponderance of the evidence, Haynes proved that Wiley breached the contract by (1) not completing the work to be performed,[5] and (2) completing some work in a defective manner that was not "workmanlike" as required by the written contract. The construction which was not workmanlike as required by the contract included, but was not limited to: the deck, the band boards, the lack of the appropriate gap above the windows and doors, both sets of stairs, the floors, the island, the garage ceiling, the roof, and the failure to properly miter joints and line up boards.

In regard to contract damages, the circuit court concluded that by a preponderance of the evidence, Ricky Duncan's $151,973.30 estimate was reasonable, and the appropriate amount required to complete the residence in a workmanlike manner as required by the contract.[6] By a preponderance of the evidence, the court found that Mr. Duncan's estimate, if perfected, would correct the defects itemized, as well as complete the work not completed as reflected. The contract between the parties not only contemplated all work to be completed in a workmanlike manner, but that the contract would result in a completed residence. Further, the court found Wiley's expert, Derrick Whitt, was not credible, and his

---

[5] The circuit court listed each item not completed in its judgment order. Judgment Order 7-9.

[6] Mr. Duncan was Haynes' construction expert.

estimate did not incorporate all the work that was performed in a non-workmanlike manner. The court stated that although the estimate of $151,973.30 may seem high in light of the original contract price, the court did not have any other comparable estimates with which to calculate damages in this case.

Further, the circuit court offset $31,398.88 of out-of-pocket expenses that Haynes alleged he spent trying to fix the home. The court did not award Haynes this expense because the court stated he should have known that no "change orders" were completed and these charges were above and beyond the original contract price. Lastly, the court awarded Haynes $5,000 for annoyance and inconvenience because the parties entered into the contract in 2017 and by 2022, the house was still not constructed.[7] In sum, the court entered judgment against Wiley for $156,973.30.

On June 21, 2022, Wiley filed a motion for a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. A hearing on the motion was held on February 15, 2023. On March 9, 2023, the court entered its order denying the motion for a new trial, stating it had ample testimony and exhibits to believe that from a preponderance of the evidence a "finished basement" was included in the "Exterior and Interior of Total $195,000" stated by Wiley in the written contract he drafted. The court stated the award of damages was based on the cost of the much-needed repairs, reconstruction, and construction in 2022 dollars, which was essentially slightly more than 55% of the appraised value in 2017 dollars.[8] Further, the court stated the award of $151,973.30 was far less than the fair market value of the residence and would give Haynes what Wiley agreed to provide, a completed, habitable residence that complies with the code and standards of workmanship. Wiley now appeals the circuit court's order denying his motion for a new trial.

We are guided by the following standard of review:

> [I]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[7] Based on the record, the expected completion date was in 2018.

[8] Based on the record, the appraised value of the property was $275,000.

*Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995).

On appeal, Wiley asserts three assignments of error to the circuit court.[9] First, Wiley argues that the circuit court committed reversible error when it admitted and relied upon parol evidence of discussions the parties had prior to the execution of the contract in concluding that a finished basement was part of the contract. Wiley asserts that nowhere in the contract or the addendum was there a mention of a finished basement, and that in fact, there was no mention of a basement at all. He acknowledges that the contract was certainly simplistic, however, he avers it provided sufficient detail for the construction of the shell and exterior of the house in accordance with the party's contract. We disagree.[10]

"The determination of whether a deed, contract, or other writing is ambiguous and does not clearly express the intention of the parties is a question of law to be determined by the court." Syl. Pt. 3, *Harrell v. Cain*, 242 W. Va. 194, 832 S.E.2d 120 (2019). "[W]here the meaning [of a writing] is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently…." Syl. Pt. 6, *Miller v. WesBanco Bank, Inc.*, 245 W. Va. 363, 859 S.E.2d 306 (2021) (citation omitted). "[I]f a circuit court finds that a … contract … is ambiguous and does not clearly express the intention of the parties, then the proper interpretation of that ambiguous document, when the facts are in dispute, presents a question of fact for the factfinder to resolve after considering all relevant extrinsic evidence." *Harrell*, 242 W. Va. at 203, 832 S.E.2d at 129.

Here, based on the contract and the addendum entered into by the parties it is unclear what is meant by "Exterior and Interior of Total of $195,000 with see Draw Schedule dated

---

[9] Wiley asserts a fourth assignment of error. Wiley argues that the circuit court erred in finding that he breached the contract by failing to complete the work, because Haynes had locked him out of the property and refused to allow him to complete the work. However, this Court declines to address this argument because Wiley failed to address it in his motion for a new trial. Further, insofar as it relates to the overall damages and work not completed, that analysis is appropriately included under the award of damages the circuit court found reasonable.

[10] Wiley argues in the alternative that even assuming the contract was ambiguous, the circuit court's finding that the contract included a finished basement was clearly erroneous. This Court finds no merit in this argument because once the circuit court found the contract to be ambiguous it was a factual determination left to the court, and based on the parties' testimony and the record as a whole, the circuit court was not clearly wrong in concluding that a finished basement was included under the contract.

5

May 24, 2017." "When a writing bears evidence of incompleteness on its face, oral evidence is admissible to supply the missing or omitted element or factor." *Corns-Thomas Eng'g & Constr. Co. v. McDowell Cnty. Ct.*, 92 W. Va. 368, 371, 115 S.E.2d 462, 465 (1922) (citation omitted). While the draw schedule and log kit admitted as evidence did provide some insight into what the parties intended, it is still ambiguous as to whether a "finished basement" was intended by the parties. Thus, the circuit court did not err in allowing parol evidence to determine what was intended by the parties.

Second, Wiley argues that the circuit court's award of damages was grossly excessive and contrary to the weight of the evidence. Wiley asserts that the court committed reversible error when it awarded the full measure of damages sought by Haynes to complete and repair the house, even though the damages awarded included items to finish the basement, as well as other components that were never part of the parties' contract. Further, Wiley argues that Mr. Duncan failed to itemize the cost of each item of repair or completion that he listed in his report, and he included items that were never part of the contract. We disagree.

"The proper measure of damages in … cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been if properly done under the agreement contained in the building contract." Syl. Pt. 2, *Trenton Constr. Co. v. Straub*, 172 W. Va. 734, 310 S.E.2d 496 (1983) (citation omitted). "To entitle plaintiff to recover substantial damages for breach of contract, where the loss is pecuniary and susceptible of proof with approximate accuracy, he[/she] must establish the quantum of damages with reasonable certainty." *Miller*, 245 W. Va. at 392, 859 S.E.2d at 335 (citation omitted).

Here, the circuit court concluded that Haynes' expert, Mr. Duncan, established that his estimate of $151,973.30 was reasonable and necessary to tender the residence in a complete and workmanlike manner as required by the contract. Further, the circuit court found that Wiley's expert, Derek Whitt, provided estimates that did not include much of the required construction to complete the work, and thus was not credible.[11] Mr. Duncan, a professional contractor, testified that the repairs and estimates he listed were required with reasonable certainty. Further, Mr. Duncan testified that his $151,973.30 charges for those needed repairs were reasonable to make the home what it was supposed to be. Mr. Duncan's estimates itemized the construction work to be performed, both in his original estimate on January 31, 2019, and his supplement provided by counsel on January 11, 2022. Thus, the circuit court did not abuse its discretion in awarding Haynes $151,973.30 to complete the construction of his residence and cure the defects.

---

[11] Derek Whitt admitted multiple times in his testimony that his estimate of repairs and construction did not include many of the items that required completion, repairs, and/or reconstruction.

Lastly, Wiley argues that the circuit court erred in denying his counterclaim for unjust enrichment. Wiley asserts that Haynes orally promised to pay him for his work on the property even after Haynes had run out of money under the contract. In reliance on this promise, Wiley asserts that he incurred $6,000 in out-of-pocket expenses. Again, we disagree.

"[I]f one person improves the land of another either through the direction of services to the land, or through the affixation of chattels to the land, that person is entitled to restitution for the improvements if certain other circumstances are present." *Realmark Developments, Inc. v. Ranson*, 208 W. Va. 717, 721, 542 S.E.2d 880, 884 (2000) (citation omitted). Further, "if benefits have been received and retained under such circumstance[s] that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Id.* at 721–22, 542 S.E.2d at 884-85 (citation omitted).

Initially, we note that Wiley likely waived this argument because he failed to address it in his motion for a new trial. Even assuming that this argument was not waived, it fails for the aforementioned reasons. The circuit court offset the $31,398.88 that Haynes was attempting to recover from Wiley based on Haynes himself performing work that Wiley failed to do. The circuit court stated that no change orders were agreed to by the parties, thus Haynes should have known that the extra costs were over and above the original contract price. For these reasons, the circuit court denied Haynes the $31,398.88 he was trying to recover. Accordingly, this Court concludes that because the parties did not enter any change order, which was required under the contract for any alterations or deviations, Wiley cannot recover under unjust enrichment.[12] Further, this Court concludes that it is not inequitable or unconscionable to deny Wiley this $6,000 based on the circuit court offsetting $31,398.88 in out-of-pocket expenses that Haynes incurred himself in trying to complete the residence.

Accordingly, we affirm the circuit court's order dated March 9, 2023.

Affirmed.

**ISSUED:** May 23, 2024

**CONCURRED IN BY:**

---

[12] The contract explicitly required "[a]ny alterations or deviations from above specifications involving extra labor or material will be executed upon a written agreement, and will become an extra charge over and above the written contract."

7

Chief Judge Thomas E. Scarr
Judge Daniel W. Greear
Judge Charles O. Lorensen